UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

…………………………………………………….………x

ABEEB BALOGUN

        Plaintiff,

-against-

NEW YORK STATE DIVISION OF HUMAN RIGHTS;
GINA MARTINEZ; ELIZABETH ORTIZ-FELICIANO;
IRIS CARRASQUILLO; MARLENY RUBIO
WILLIAM PLOSKI; ALI JAFRI

        Defendants.

………………………………………………………..x

20 Civ. 10484 (LGS)

**AMENDED COMPLAINT**

**[JURY TRIAL DEMANDED]**

1.    Plaintiff , Abeeb Balogun proceeding Pro Se, brings this action seeking relief for

discrimination based on race, sex, and national origin; hostile work environment; and retaliation

in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-2; breach of contract;

promissory estoppel; interference with contractual relationship; negligent supervision; and

intentional infliction of emotional distress.

## **PARTIES**

2.    Plaintiff, Abeeb Balogun, a Black male of Nigerian descent, is a citizen of United States

and a resident of Queens County, City and State of New York.  At all times relevant to this suit

until his termination in October 2019, Plaintiff was employed as a Human Rights Specialist I

("HRS 1") with the New York State Division of Human Rights ("NYSDHR").

1

3.     Defendant NYSDHR is a New York State ("NYS") agency created to enforce the New York State Human Rights Law ("NYSHRL") and has its central office located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

4.     Defendant Gina Martinez at all times relevant to this suit, was the Deputy Commissioner of NYSDHR and responsible for overseeing investigation of complaints and the supervision of regional directors.  Her office was located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

5.     Defendant Elizabeth Ortiz-Feliciano at all times relevant to this suit, was the Director of Investigations at the Housing Investigation Unit ("HIU") of the NYSDHR and her office was located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

6.     Defendant Iris Carrasquillo at all times relevant to this suit, was the Director of Federal Contracts and the Acting Director of Investigations at HIU.  Her office was located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

7.     Defendant Marleny Rubio at all times relevant to this suit, was a Human Rights Specialist II ("HRS II") and responsible for direct supervision of HRS Is.  Her office was located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

8.      Defendant William Ploski at all times relevant to this suit, was a HRS II and responsible for direct supervision of HRS Is.  His office was located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

9.      Defendant Ali Jafri at all times relevant to this suit, was the Director of Human Resources ("HR").  His office was located at 1 Fordham Plaza, 4th Floor, Bronx, New York.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.  This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.  Venue is proper in this Court because Defendants maintained facilities and business operations in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  On 11/28/2020, the EEOC issued Plaintiff a Notice of Right to Sue.  A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit A.

12.      Plaintiff has timely filed this action and have complied with all administrative prerequisites to bring this lawsuit.                          .

## STATEMENT OF FACTS

13.    At all times relevant to this action, Plaintiff was employed by the NYSDHR as a HRS 1 in the Housing Investigations Unit (HIU).  According to Plaintiff's appointment letter, his position was assigned to, and represented by the PEF bargaining unit.  An HRS 1, also referred to as an investigator, is responsible for conducting discrimination investigations, engaging parties in mediation or conciliation, and preparing a final investigation report and basis of determination.  Investigators are also required to make a "probable cause" or "lack of probable cause" finding.  All completed reports are subject to two levels of review by an HRS II and the Director of Investigation before approval.  However, "probable cause" findings are subject to a third level of review by the Agency's Probable Cause Review Unit before final approval.

14.    Plaintiff's employment which commenced on 4/26/2018 was subject to the NYS Civil Service Law ("CSL").  In accordance with the Civil Service Rule ("CSR") 4.5, Plaintiff was required to serve a 52-week probationary period from 4/26/2018 – 4/25/2019 and to receive quarterly performance evaluation.  Ms. Allison Schwier, was Plaintiff's initial supervisor.

15.    At all times relevant to this action, Plaintiff was the only Black male HRS I of Nigerian descent at HIU.  The HIU overwhelmingly consisted of Hispanics and female employees.  Upon information and belief, the Deputy Commissioner, Gina Martinez, is a Hispanic female.  The Director of Federal Contract, Iris Carrasquillo, is a Hispanic female.  The Interim Director of Investigation, William LaMot, is a Hispanic male.  Marleny Rubio, an HRS II is a Hispanic female.  William Ploski, an HRS II  is a White male.  There were seven HRS Is on the unit including, Elizabeth Ortiz-Feliciano, a former Director of Investigations, and a Hispanic female;

4

Doris Gonzalez, a Hispanic female; Elena Perlongo, a Hispanic female; Aimee May, an Asian

female; Alexa Rogers, a White female; Eno Obong-Essien, a Black, female; and Plaintiff.

16.     At the time of Plaintiff's appointment, the HIU had a heavy backlog of cases.  Thus,

during the first two quarters of Plaintiff's employment, the HIU Management targeted specific

cases to be completed by the end of each month with particular emphasis on cases that were over

200 days old.  Consequently, all the HRS 1s were instructed on the cases to prioritize monthly

and the cases they were mandated to complete by the end of each month.

17.     Around June 2018, Plaintiff submitted case # 10192811 with a finding of probable cause.

Upon review and approval by Plaintiff's supervisor, Ms. Schwier and the Director of

Investigations, Ms. Ortiz-Feliciano, the case was sent to the Probable Cause Review Unit for

approval.  Upon review of the case, Ms. Sobkowski, the reviewing Attorney, disapproved the

probable cause finding.  Thereafter, Ms. Ortiz-Feliciano instructed Plaintiff to re-write the report

with a lack of probable cause determination.  Plaintiff contended that the evidence uncovered

supported a finding of probable cause and requested a meeting with Ms. Sobkowski.  At this

point, Ms. Ortiz-Feliciano accused Plaintiff of advocating for the Complainant in the case.

However, during the subsequent telephone conference, Ms. Sobkowski agreed that the facts and

evidence supported a probable cause finding as explained by the Plaintiff, so she approved the

probable cause determination in the case.  Thereafter, Plaintiff began experiencing hostile

treatment from Ms. Ortiz-Feliciano, including  requiring Plaintiff to conduct investigation into

allegations that were not alleged in some complaints, demanding that Plaintiff conduct additional

visit to a shelter that placed Plaintiff's safety in jeopardy. These adverse treatments from Ms.

Ortiz-Feliciano and other management staff continued to escalate till Plaintiff was terminated.

18.     On or around 7/26/2018, Plaintiff received his first quarterly probation review for the

period 4/26/2018 - 7/26/2018. Although, Plaintiff did not receive any unsatisfactory rating on

his probation report, Plaintiff nonetheless, inquired from Ms. Schwier as to why he received a

"fair" rating in the conduct and leadership category of performance evaluation. Ms. Schwier

responded by stating that it was because she observed Plaintiff disagreeing with Ms. Ortiz-

Feliciano when Ms. Ortiz-Feliciano instructed Plaintiff to rewrite case # 10192811 with a lack of

probable cause determination. On or around 8/3/2018, Plaintiff was reassigned to receive direct

supervision from Mr. William Ploski, who had just been promoted to the position of HRS II.

19.     On or around 8/3/2018, Ms. Ortiz-Feliciano informed Plaintiff that his seven case

submissions were the highest number of cases submitted by any investigator for the month of

July 2018 and that she expected him to submit at least seven cases per month moving forward.

Plaintiff responded by informing Ms. Ortiz-Feliciano that he could only take credit for five of the

seven cases since an intern conducted the investigation on one of the cases and one was a lack of

jurisdiction ("LOJ") case which did not require any investigation to be completed.

20.     On or around 8/27/2018, Deputy Commissioner Martinez notified Plaintiff that she was

informed by Ms. Ortiz-Feliciano that Plaintiff told Ms. Ortiz-Feliciano that he could not close

more than five cases a month. Plaintiff explained to Ms. Martinez that Ms. Ortiz-Feliciano

misrepresented his statement, whereby Plaintiff told Ms. Ortiz-Feliciano that he could only take

6

credit for five of the seven cases he submitted for the month of July 2018, when Ms. Ortiz-Feliciano advised Plaintiff that she expected him to submit a minimum of seven cases per month moving forward based on his case submissions for July 2018.

21.    On or around 8/31/2018, Ms. Ortiz-Feliciano told Mr. Ploski to assign three LOJ cases to Plaintiff.  LOJ cases are usually considered freebees because they do not require any investigation to be completed and they are counted towards an investigator's total case production.  LOJ cases are supposedly shared among all investigators to help increase their case production.  When the subject three LOJ cases were assigned to the Plaintiff on that last day of the month of August 2018, Plaintiff asked Mr. Ploski whether he should set aside the last of the cases that he was mandated to complete by the end of August 2018 and first complete the three LOJ cases.  Mr. Ploski responded by instructing Plaintiff to first complete the last mandated case and work on the three LOJ cases afterwards.  Plaintiff completed the last mandated case past his regular work hours and was unable to get to the LOJ cases by the end of the workday.  However, upon arriving at work the following Monday 9/2/2018, the three LOJ cases had been removed from Plaintiff's office desk without any notice and before he could complete them.

22.    About a week later on or around Friday 9/7/2018, Mr. Ploski unreasonably accused Plaintiff of being "Lackadaisical" and not appreciating the time-sensitive needs of the unit for failing to complete the three LOJ cases that were assigned to Plaintiff on 8/31/2019.  Ploski further informed Plaintiff that when he is given something to do, it had to be done immediately.

23.     On or around 9/13/2018, Mr. Ploski informed Plaintiff that he was not going to say anything about the three LOJ cases, but only stressed it because he had to go back and report to Ms. Ortiz-Feliciano, who had earlier instructed him to scold Plaintiff for not completing the three LOJ cases on 8/31/2018.  Mr. Ploski stated that he gave the LOJ cases to Plaintiff as a gift to bump up Plaintiff's case production and that he would no longer help Plaintiff with any cases and would not give Plaintiff any easy cases after Plaintiff complained that it was unfair for him to scold Plaintiff about the three LOJ cases when he was the same person who instructed Plaintiff to set aside the LOJ cases and focus on completing the last mandated case for August 2018.  Thereafter, when Plaintiff informed Mr. Ploski that he was being subjected to unfair treatment on the unit because of his race, sex and national origin, Mr. Ploski responded by stating that, even if Plaintiff was justifiably upset with any superior employee at HIU, Plaintiff should keep it in his mind, swallow his pride, and not state how he felt.  Mr. Ploski further advised Plaintiff that they could not have people that are unhappy or felt abused on the unit.

24.     On or around 10/26/2018, Mr. Ploski and Ms. Carrasquillo conducted Plaintiff's second quarterly probation review for the period 7/27/2018 - 10/26/2018.  In the generated report dated 10/26/2018, Plaintiff received satisfactory rating in all the 14 categories of performance evaluation and a recommendation that his probation be continued.

25.     Around December 2018, Ms. Ortiz-Feliciano was demoted from her position as director of investigations and Ms. Carrasquillo, who at the time, was the Director of Federal Contracts, was also assigned as the acting director of investigations.  A few weeks later, Mr. William LaMot, who was at the time, a director at one of NYSDHR's Brooklyn regional offices, was also

assigned as the interim director of investigations.  Mr. LaMot worked at the HIU twice a week

while Ms. Carrasquillo provided everyday instructions and supervision on the unit.


26.     On or around 1/28/2018, Mr. Ploski and Ms. Carrasquillo conducted Plaintiff's third

quarterly probation review for the period 10/27/2018 - 1/26/2019.  In the generated report dated

1/28/2019, Plaintiff received satisfactory rating in all the 14 categories of performance

evaluation and a recommendation that his probation be continued.


27.     On or around 4/15/2019, Mr. Ploski and Ms. Carrasquillo conducted Plaintiff's fourth

quarterly probation review for the period 1/27/2019 - 4/25/2019.  This fourth quarter probation

review also represented Plaintiff's 52-week probationary term evaluation.  In the generated

report dated 4/15/2019, Plaintiff  received satisfactory rating in all the 14 categories of

performance evaluation.  However, contrary to the Civil Service policies and procedures,

Plaintiff was not retained, and his probationary term was extended.


28.     During Plaintiff's 52-week probation review on 4/15/2019, Mr. Ploski and Ms.

Carrasquillo informed Plaintiff that they were satisfied with Plaintiff's work and work product,

but the reason they recommended extending Plaintiff's probation was to give him an opportunity

to show that he was capable of completing an average of nine cases per month since he was not

assigned sufficient number of cases to meet that average during Plaintiff's 52-week probationary

term.  Mr. Ploski and Ms. Carrasquillo stated that they had to advocate on Plaintiff's behalf

before Ms. Martinez, by explaining that Plaintiff was a good worker, and that Plaintiff was

assigned many difficult cases to justify extending Plaintiff probation instead of terminating it.

9

Mr. Ploski and Ms. Carrasquillo informed Plaintiff that if he accepted the offer for extended probation, HR would procedurally extend his probation for six months, but they will make his appointment permanent after he served the minimum required three months of extended probation on the condition that he completed an average of nine cases per month during the period 4/26/2019 – 7/25/2019. Mr. Ploski also stated that the reason he did not assigned Plaintiff more of the LOJ cases was because he heard Plaintiff told Ms. Ortiz-Feliciano that Plaintiff did not want LOJ cases. Plaintiff refused to sign the report and requested a meeting with the HR Director Ali Jafri and the PEF Union Representative Bellew McManus.

29.     On or around 4/17/2019, Plaintiff met with Mr. McManus who informed Plaintiff that his rights were limited as a probationary employee and cannot file a union grievance either. Mr. McManus further told Plaintiff that he spoke with the HIU Management and was told that they extended Plaintiff's probation because they did not want to set a new precedence by allowing Plaintiff to pass probation without completing a minimum of 108 cases during his 52-week probationary period. Mr. McManus stated that the sense he got from the Management during the meeting was that they will pass Plaintiff after the first quarter of Plaintiff's extended probation if Plaintiff was able to complete a minimum of 27 cases during the period. Plaintiff further complained to Mr. Bellew that he did not believe that he would receive a fair evaluation if he remained at HIU for his extended probation due to the unfair treatment he was being subjected to because of his race, sex, and national origin by supervisory and management staff. Mr. McManus advised Plaintiff that he should be given a new assignment at one of the Agency's regional offices for his extended probation and that he should inquire with HR.

30.     On or around 4/17/2019, Plaintiff met with Mr. Jafri, the HR Director and requested a

new assignment at one of the NYSDHR's regional offices for his extended probation.  Plaintiff

complained to Mr. Jafri that he did not believe that he would receive a fair evaluation if he

remained at HIU for his extended probation, due to the unfair treatment he was being subjected

to because of his race, sex, and national origin by supervisory and management staff.  Mr. Jafri

responded by stating that it was not possible to give Plaintiff a new assignment at other regional

offices because NYSDHR is a small agency.  Mr. Jafri asserted that they have been told by the

Governor's Office of Employment that an exception to Civil Service Rule 4.5 allows them not to

change an employee's assignment for extended probation if it was not possible.  However, upon

request, Mr. Jafri failed to indicate or show the existence of such exception to Rule 4.5.


31.     On or around 4/25/2018, Plaintiff was reassigned to receive direct supervision during his

extended probationary period 4/26/2019 – 10/25/2019 from Ms. Rubio, who had just been

promoted to the position of HRS II at HIU.


32.     On or around 7/26/2019, Ms. Rubio and Ms. Carrasquillo conducted Plaintiff's

probation review for the first quarter of his extended probation 4/26/2019 – 7/25/2019.  In the

generated report dated 8/1/2019, Plaintiff received satisfactory rating in all the 14 categories of

performance evaluation, but it was questionably recommended that his extended probation be

continued for failure to meet case production requirement.  Ms. Rubio erroneously indicated that

Plaintiff completed 25 cases, two cases less than the actual 27 cases that Plaintiff completed in

spite of the fact that Plaintiff lost two of his family members during this period and was out on

bereavement for about two weeks.  Plaintiff refused to sign the report and requested a meeting

with Deputy Commissioner Martinez to challenge the inaccuracies in his probation report and

the recommendation which was contrary to Defendants Carrasquillo and Ploski's promise to

make his appointment permanent upon completing a minimum of 27 cases during the period.


33.     On or around 8/1/2019, Plaintiff met with Deputy Commissioner Martinez in the

presence of Ms. Carrasquillo and Ms. Rubio.  During the meeting, Ms. Rubio acknowledged that

Plaintiff submitted 27 cases during the first quarter of his extended probation period ending

7/25/2019 and explained that she wrote 25 submissions in Plaintiff's probation report because

she had prepared the report on 7/24/2019, before Plaintiff submitted two additional cases on

7/25/2019.  Ms. Rubio further asserted that the cases had to have been closed before they can be

counted towards Plaintiff's total case production.  In response, Plaintiff advised Ms. Martinez

that case submissions had always been used to determine the total case production for all

investigators at HIU.  Ms. Martinez proceeded to review a copy of the tasks and standards for

HRS I wherein it was written that HRS Is are required to "complete" an average of 108 - 120

cases per year when current office demands required it.  Ms. Martinez incorrectly insisted that

the word "complete" meant that the cases had to have been officially closed in the system and not

just submitted before they can count towards Plaintiff's total case production.


34.     After Ms. Carrasquillo and Ms. Rubio left the meeting on 8/1/2019, Plaintiff complained

to Ms. Martinez that he was being singled out and subjected to unfair treatment at the HIU

because of his race, sex, and national origin.  Ms. Martinez responded by stating that she had a

problem with Plaintiff's complaint.  She stated that they have a flow at the HIU and that she felt

that Plaintiff was not taking responsibility.  Ms. Martinez further stated that they needed

12

someone who will "get with the program" and that she felt like Plaintiff did not have good

relationship with his supervisors.  Ms. Martinez also stated that she felt that Plaintiff might not

be the best fit for them, and that Plaintiff may go somewhere else if he is unable to get along

with his supervisors.  Ms. Martinez also told Plaintiff that she would talk to the directors at the

other regional offices who had vacancies to see about moving Plaintiff so that he could get a

fresh start.  Plaintiff did not receive any further communication from Ms. Martinez in this regard.

35.     On or around 8/14/2019, during a case review for case # 10201551, Ms. Rubio told

Plaintiff that a field visit would be beneficial on the case and instructed Plaintiff to go ahead and

schedule a field visit for the case.  On 8/16/2019 at around 9:00 am, Plaintiff informed Ms.

Rubio that he had scheduled the field visit for that afternoon.  Prior to leaving for the field visit,

Plaintiff sent Ms. Rubio an email, informing her that he was leaving for the subject visit.

Plaintiff further wrote on the unit calendar that he was out of the office on the subject field

visit.  However, on 08/19/2019, Ms. Rubio falsely accused Plaintiff of being absent without

leave on 8/16/2019 and conducting the subject field visit without obtaining prior approval from

her or informing anyone of his whereabout.

36.     On or around 9/4/2019, Plaintiff met with Mr. LaMot, who was the interim Director of

Investigations.  Plaintiff complained to Mr. LaMot that he is concerned that he would not receive

a fair evaluation at the conclusion of his extended probation, due to the unfair treatment he was

being subjected to because of his race, sex, and national origin by supervisory and management

staff at HIU.  Plaintiff asked Mr. LaMot to help address his concerns.  Mr. LaMot responded by

informing Plaintiff that he would meet with Management, see what they have to say and get back to Plaintiff.  Plaintiff did not receive any further response from Mr. LaMot in this regard.

37.     On or around 10/1/2019, Plaintiff corresponded with Ms. Rubio via email with regard to conducting field visits on 10/4/2019 for cases # 10202098 and 10202446.  Ms. Rubio asked Plaintiff to prepare the interview questions for the field visits and to specify who would be accompanying him.  Plaintiff prepared the questions and upon speaking with his coworker, he advised Ms. Rubio that none of his co-workers expressed being available to accompany him.

38.     On or around 10/2/2019, Plaintiff met with Ms. Rubio for a review of case # 10201173.  Ms. Rubio informed Plaintiff that a second field visit might be necessary on the case.  She instructed Plaintiff to first send witness letters to the tenants at the subject building and send a second request for additional information to the Respondents.  Ms. Rubio further informed Plaintiff to schedule a second field visit in the case if he was unable to obtain the needed information from the tenants and the Respondents.  Plaintiff sent out the witness letters and the second request for information as instructed.

39.     On or around 10/3/2019, Ms. Rubio was absent from work so Plaintiff informed Mr. Ploski and Ms. Carrasquillo that he would be heading directly from home to the subject properties for his scheduled field visits for cases # 10202098 and 10202446 on the next day.  Mr. Ploski and Ms. Carrasquillo informed Plaintiff that he did not have permission to conduct the subject field visits.  Mr. Ploski and Ms. Carrasquillo stated that Ms. Rubio had instructed them not to allow Plaintiff to go on the field visits without having someone to accompany him.  At the

14

time here relevant, no one on the unit including Mr. Ploski and Ms. Carrasquillo, expressed being available to accompany Plaintiff to the field visits. Thereafter, Plaintiff sent an email to the Deputy Commissioner Martinez and complained about Defendants Rubio, Carrasquillo, and Ploski's refusal to allow him to go on a scheduled field visit. Plaintiff informed Defendant Martinez that the end of his extended probation was at hand and refusing to allow him to conduct scheduled field visits would hinder his capacity to meet the total case production that was required of him to pass probation.

40.     On or around 10/7/2019, Ms. Rubio falsely accused Plaintiff by email, of refusing to conduct a second field visit for case # 10201173 when on 10/2/2019, she informed Plaintiff that one might be necessary for the case. In an email response on 10/8/2019, Plaintiff maintained that he followed Ms. Rubio's suggestions as instructed whereby she told Plaintiff to first send witness letters to the tenants and a second request for additional information to the Respondents before scheduling a second field visit if Plaintiff was unable to get the additional information.

41.     Defendant Rubio also falsely accused Plaintiff of sending an email to his supervisor on 10/3/2019 insisting that he should be able to conduct field visit alone. Contrarily, Plaintiff had sent an email to the Deputy Commissioner Martinez after he was denied permission to conduct scheduled field visits by Defendants Rubio, Carrasquillo, and Ploski. In the email, Plaintiff complained about the denial and informed Defendant Martinez that the 100-day mark to timely complete the cases was at hand. Plaintiff also informed Defendant Martinez that prior to this denial of permission, that he had conducted most of his field visits alone and without any pushbacks. Plaintiff further reminded Defendant Martinez that the end of his extended

probation, and that refusing to allow him to conduct the scheduled field visits would hinder his capacity to meet the total case production that was required of him to pass probation.

42.     On 10/10/2019 without any prior notice, Mr. Jafri called Plaintiff to his office wherein Ms. Rubio was waiting in a conference room.  Mr. Jafri informed Plaintiff that he was instantly being terminated due to unsatisfactory service and insubordination, and that Plaintiff had until the end of that workday to remove his personal belongings.  Mr. Jafri further informed that the meeting also represented Plaintiff's second quarter extended probation and final review for the period 7/26/2019 - 10/25/2019.  Ms. Rubio provided Plaintiff a copy of the final report dated 10/10/2019, wherein Plaintiff was given unsatisfactory rating in ten of the 14 categories of performance evaluation and a recommendation that his appointment be terminated.

43.     At around 2:30 pm on 10/10/2019, shortly after Mr. Jafri informed Plaintiff that he had till the end of the day to gather his personal belongings and leave the premises,  Ms. Martinez instructed security staff to remove Plaintiff from the building before the end of the workday and before Plaintiff could gather his personal belongings.  Consequently, many of Plaintiff's personal belongings remained in the office as he was forced out of the building by security staff.

## FIRST CLAIM FOR RELIEF

### [Discrimination Based on Race, Sex, and National Origin in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]

44.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 above, as if fully set forth herein.

45.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..." 42 U.S.C. § 2000e-2(a).  Plaintiff alleges that Defendant NYSDHR through its agents discriminated against him by subjecting him to unequal terms, conditions, and privileges because of his protected classes.

46.     Defendants Carrasquillo and Ploski who were at relevant times, respectively Plaintiff's director and supervisor, subjected Plaintiff to unequal terms and conditions of his employment by failing to recommend that his appointment be made permanent but rather extended his probation after he satisfactorily completed the required 52-week probationary term.  Pursuant to Civil Service Rule 4.5, an employee's appointment will become permanent unless the conduct or performance of such probationary employee was deemed unsatisfactory based on the tasks and standards required for the probationary employee's position.  Plaintiff completed his 52-week probation term and received satisfactory rating in all the 14 categories of performance evaluation, but his probation was extended.  Defendants Carrasquillo and Ploski's failure to retain Plaintiff's appointment after successfully completing the required 52-week probationary term violated the applicable Civil Service policies and procedures.  Plaintiff believes that no other similarly situated HRS Is were subjected to extended probation while receiving satisfactory rating in all the areas of performance assessment during their probationary period, including Elizabeth Ortiz-Feliciano, Doris Gonzalez, Elena Perlongo, Marleny Rubio, and Aimee May, all of whom are female of Hispanic descent except Aimee May who is of Asian descent.

17

47.    Defendants Carrasquillo and Ploski subjected Plaintiff to unequal terms and conditions of

employment by requiring Plaintiff to complete more cases than he was assigned before he would

be deemed to have passed the required 52-week probationary term.  Defendants Carrasquillo and

Ploski asserted that they extended Plaintiff's probation for failure to complete a minimum of 108

cases during his 52-week probationary period.  However, throughout his 52-week probationary

term, Plaintiff was assigned less than 108 cases and he completed all the cases that could have

been completed on his caseload during the period.  Moreover, it was mathematically impossible

for Plaintiff to have met this standard.  Plaintiff believes that no other similarly situated HRS Is

at HIU were assigned less than 108 cases during their probation period and subjected to extended

probation for failure to complete a minimum of 108 cases, including Elizabeth Ortiz-Feliciano,

Doris Gonzalez, Elena Perlongo, Marleny Rubio, and Aimee May, all of whom are female of

Hispanic descent except Aimee May who is of Asian descent.  Moreover, some of the similarly

situated HRS Is passed probation without completing 108 cases during their probation period.


48.    Defendants Carrasquillo, Ploski, Rubio, and Martinez subjected Plaintiff to unequal terms

and conditions of employment by failing to make his appointment permanent after successfully

completing the first quarter of extended probation.  The Civil Service Rule 4.5 allows the

employer to terminate an employee's extended probation and make his appointment permanent

after the employee satisfactorily completed the minimum three months of extended probation.

At the time Plaintiff's probation was extended, Defendants Carrasquillo and Ploski promised to

make his appointment permanent after he completed the required three months of extended

probation, on the condition that Plaintiff also completed an average of nine cases per month

during the period.  Plaintiff completed a total of 27 cases and received satisfactory rating in all

the 14 categories of performance evaluation during the period.  Yet, his appointment was not

made permanent, but his extended probation was rather continued.  Plaintiff believes that no

other similarly situated HRS Is at HIU were denied retention of their employment after fulfilling

the conditions of their employment, including Elizabeth Ortiz-Feliciano, Doris Gonzalez, Elena

Perlongo, Marleny Rubio, and Aimee May, all of whom are female of Hispanic descent except

for Aimee May who is of Asian descent.


49.      Defendants Rubio and Martinez subjected Plaintiff to unequal terms and conditions of

employment by requiring Plaintiff's cases to be closed before counting towards his total case

production.  On 8/1/2019, Defendants Martinez and Rubio misinterpreted the word "complete"

written in the tasks and standards for the HRS I position, to mean that cases must have been

closed in the Agency's case management system and not just submitted to his supervisor before

counting towards Plaintiff's case production.  In the generated report for the first quarter of

Plaintiff's extended probation dated 8/1/2019, Defendant Rubio incorrectly indicated that

Plaintiff completed 25 cases instead of the actual 27 cases he submitted.  Defendant Rubio

explained that she did not include the two additional cases because they were yet to be closed.

However, case submissions had been used to determine Plaintiff's total case production for his

preceding evaluations as well as the other HRS Is.  Moreover, some of the cases that Defendant

Rubio counted towards Plaintiff's total case production for the first quarter of his extended

probation period were also yet to be closed.  Also, the supervisors but not the HRS Is control

when a case will close.  Defendants Rubio and Martinez intentionally misrepresented the subject

task and standard to justify their explanation that Plaintiff failed to meet the case production

requirement for the period, and their failure to fulfil the promise of retaining Plaintiff employment upon his completion of 27 cases during the first quarter of his extended probation.  Plaintiff believes that no other similarly situated HRS Is had submitted cases excluded from their total case production because the cases were yet to be closed, including Elizabeth Ortiz-Feliciano, Doris Gonzalez, Elena Perlongo, Marleny Rubio, and Aimee May, all of whom are female of Hispanic descent except Aimee May who is of Asian descent.

50.     Defendant Ploski subjected Plaintiff to unequal terms and conditions of employment by denying him supervisory guidance and assigning him more difficult cases.  On 9/13/2018, Defendant Ploski threatened that he will no longer help Plaintiff with any cases and would not give Plaintiff easy cases.  Furthermore, in Plaintiff's third quarter probation report dated 1/28/2019, Defendant Ploski stated that many of the cases he assigned to Plaintiff  were large and difficult cases.  Additionally, during Plaintiff's fourth quarter probationary review on 4/15/2019, Defendants Ploski and Carrasquillo stated that part of the reasons they were able to justify extending Plaintiff's probation was because Plaintiff was assigned many difficult cases. Plaintiff believes that Defendant Ploski intentionally assigned him more difficult cases and denied him supervisory guidance in order to undermine his work product.  Plaintiff believes that no other similarly situated HRS Is who were at relevant times, under the supervision of Defendant Ploski were denied supervisory guidance, including Elizabeth Ortiz-Feliciano, Doris Gonzalez, Elena Perlongo, and Aimee May, all of whom are female of Hispanic descent except Aimee May who is of Asian descent.

51.    Defendant Jafri subjected Plaintiff to unequal terms, conditions, or privileges of employment by failing to provide Plaintiff a new assignment upon extending his probation, in spite of Plaintiff's complaint that he did not believe he would receive a fair evaluation if he remained at HIU for extended probation because he was being singled out and subjected to unfair treatment by management staff.  According to the Civil Service Rule 4.5, an employer can extend an employee's probation for a minimum of 12 weeks and a maximum of 26 weeks in a different assignment.  On 4/17/2019 Plaintiff requested to be moved to one of the other NYSDHR's regional offices for his extended probation. Defendant Jafri responded by stating that it was not possible for Plaintiff to be moved.  Defendant Jafri asserted that they have been informed by the Governor's Office of Employment that an exception to Civil Service Rule 4.5 allows them to refuse changing an employee's assignment for extended probation if it was not possible.  However, the same HRS I positions were available at other regional offices and there were other HRS 1s who had been moved from one NYSDHR's office to another.  Moreover, on 8/1/2019, Defendant Martinez informed Plaintiff that she would talk to her regional directors to see about moving Plaintiff and allow him to get a fresh start.  This contradicts Defendant Jafri's assertion that it was not possible to move Plaintiff to one of NYSDHR's  regional offices. Defendant Jafri intentionally lied about his stated exception to Civil Service Rule 4.5 and as such, subjected Plaintiff to a different term, condition, or privilege of his employment.  Plaintiff believes that no other similarly situated HRS Is at HIU were denied reassignment or transfer to a different office including Marleny Rubio and Aimee May.


52.    Defendant Ploski subjected Plaintiff to unequal terms, conditions, and privilege of his employment by failing to assign him comparable total number of cases, including LOJ cases

during his 52-week probationary period as compared to other similarly situated HRS Is who were not of Plaintiff's protected classes. Defendant Ploski rather took away LOJ cases that were already assigned to Plaintiff. At HIU, LOJ cases are considered freebees because they do not require any investigation and they are counted towards an investigator's total case production. These LOJ cases are purportedly shared similarly among investigators to help increase their total case production. On 8/3/2018 and without notice, Defendant Ploski took away the three LOJ cases that he had earlier assigned to Plaintiff and assigned them to other investigators. On 9/13/2018, Defendant Ploski informed Plaintiff that he would no longer assign any easy cases to Plaintiff. And on 4/15/2019 during Plaintiff's probation review, Defendant Ploski explained that the reason he did not assign Plaintiff more of the LOJ cases during his 52-week probation period was because he heard Plaintiff telling Defendant Ortiz-Feliciano that Plaintiff did not want LOJ cases. Plaintiff believes that Defendant Ploski assigned more cases, including LOJ cases to other similarly situated HRS Is who were on probation during Plaintiff's employment, including Aimee May and Elena Perlongo who are not of Plaintiff's protected classes.

53.     Defendants Rubio and Carrasquillo denied Plaintiff a privilege of employment by refusing to assign him any intern during his extended probationary period. The HIU has a routine practice of using interns to assist HRS 1s with investigations. Throughout Plaintiff's extended probation period, he was not assigned any intern to assist him while all the other HRS Is who are not of Plaintiff's protected classes were assigned one or more interns to assist them with their respective investigations. When Plaintiff inquired as to why he was not assigned any intern, Defendant Rubio repeatedly informed Plaintiff that she had something else for the interns to do. Additionally, when Plaintiff complained to Defendant Carrasquillo, who was the Acting

Director, she simply advised Plaintiff that Defendant Rubio was in charge of the interns and that Plaintiff should take his complaint up with her. Plaintiff believes that Defendants Rubio and Carrasquillo refused to provide him an intern in effort to make it more difficult for him to meet the case production standard of which they demanded that Plaintiff complete an average of nine cases per month in order to pass his extended probation. Plaintiff believes that Defendant Rubio and Carrasquillo's failure to assign him interns during his extended probationary period constituted an improper denial of an employment privilege that were afforded to other similarly situated HRS Is at HIU, including Elizabeth Ortiz-Feliciano, Doris Gonzalez, Elena Perlongo, and Aimee May, all of whom are female of Hispanic descent except Aimee May who is of Asian descent.

54.     Plaintiff's complaints to supervisory and management employees did not cause Defendants to refrain from subjecting Plaintiff to unequal terms, conditions, and privileges of his employment.

55.     Plaintiff's race, sex and national origin were the determining factor and/or a motivating factor in the above-named Defendants' adverse action against Plaintiff. Plaintiff was the only Black male of Nigerian descent who was permanently employed as an HRS Is and none of the other similarly situated were subjected to the same treatment but were rather treated better.

56.     Management level employees knew, or should have known, of the unlawful conduct and did not exercise reasonable care to prevent the unlawful employment practices and did not exercise reasonable care to stop the adverse treatment of Plaintiff.

23

57.     The unlawful actions were intentional, willful, malicious, and/or done with reckless

disregard to Plaintiff's rights.


58.     As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff

sustained physical, mental, economic, and emotional injuries, resulting in damages, including

denial of permanent employment status, and being subjected to extended probation.


59.     Defendant NYSDHR is liable for the discriminatory conduct of the named Defendants

because they are agents of Defendant NYSDHR and were acting in their official capacity at the

time they engaged in the conduct.


## SECOND CLAIM FOR RELIEF

**[Discriminatory Discharge in Violation of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e-2(a)]**

60.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 59

above, as if fully set forth herein.

61.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer

"to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin..." 42 U.S.C. § 2000e-

2(a). Plaintiff alleges that Defendant NYSDHR discriminatorily terminated his employment

based on a fabricated reasons proffered by Defendants Rubio and Martinez in Plaintiff's final probation report because of his protected classes.

62.     In Plaintiff's final evaluation report dated 10/10/2019, Defendants Rubio and Martinez proffered that they terminated Plaintiff two weeks before the end of his extended probation due to unsatisfactory work performance and insubordination.  They stated among other things, that Plaintiff failed to improve his written communication, that Plaintiff had not shown that he was able to complete timely investigation, that Plaintiff had not shown he could manage his workload efficiently, and that Plaintiff had not shown that he was able to adhere to the rules of the unit. However, the record starkly contradicts Defendants Rubio and Martinez's assertions, but rather shows that Defendant Rubio and Martinez's assertions were false, contradictory, and fabricated to justify their wrongful termination of  Plaintiff's employment.

63.     In Plaintiff's final extended probation report dated 10/10/2019, Defendant Rubio gave Plaintiff "unsatisfactory" rating in ten of the 14 categories of performance evaluation.  However, prior to this final report, Plaintiff had received satisfactory rating in all the 14 areas of performance evaluation for all his previous five evaluations, including the preceding evaluation dated 8/1/2019, which was also conducted by Defendant Rubio.  Defendant Rubio failed to provide any meaningful rationale that could justify the drastic swing in her evaluation of Plaintiff's work performance between 8/1/2019 and 10/10/2019.  Rather, Defendant Rubio falsely pointed to incidents that she alleged occurred on 5/15/2019 and on 6/11/2019.  If these incidents were true as she alleged, they would and should have been addressed in the probation evaluation that followed on 8/1/2019.

64.     Furthermore, Plaintiff submitted an average of nine cases per month for a total of 27

cases during the first quarter of his extended probation period 4/26/2019 – 7/25/2019 and was on

pace to complete an average of nine cases per month for the second quarter of his extended

probationary period 7/26/2019 – 10/25/2019 before he was abruptly terminated.  Moreover,

Plaintiff was commended on multiple occasions by supervising employees at HIU as well as the

NYSDHR's hearing officers for the quality of his written reports.  At no time during Plaintiff's

employment did Plaintiff's supervisor or director expressed any concern regarding the adequacy

of Plaintiff's writing, and he was never a subject of any disciplinary action, including for

insubordination throughout the approximately 18 months of his employment at NYSDHR.

65.     Defendants failed to articulate a legitimate nondiscriminatory reason for terminating

Plaintiff's employment.  Defendants' proffered reasons for terminating Plaintiff were inaccurate,

contradictory, and falsely provided without any supporting evidence.  Defendants Rubio and

Martinez's explanations are unworthy of credence and constitute a pretext for their

discriminatory animus against Plaintiff.

66.     Plaintiff's race, sex and national origin were the determining factor and/or a motivating

factor in Defendants Rubio and Martinez's adverse employment actions.  Plaintiff believes that

none of the other similarly situated HRS Is who were on probation during Plaintiff's employment

were subjected to false and inaccurate evaluation or termination, including Aimee May and

Elena Perlongo who are not of Plaintiff's protected classes.

67.     Management level employees knew, or should have known, of Defendants Rubio and

Martinez's unlawful employment practices and did not exercise reasonable care to prevent the

practices and did not exercise reasonable care to stop the adverse treatment of Plaintiff, even

after Plaintiff's repeated opposition to it.

68.     Defendants Rubio and Martinez's unlawful actions were intentional, willful, malicious,

and/or done with reckless disregard to Plaintiff's right.

69.     As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff

sustained physical, mental, economic, and emotional injuries, resulting in damages, including

chronic chest pain, high blood pressure, severe anxiety, difficulty sleeping, depression, loss of

state employment and associated benefits, difficulties finding other employment, and inability to

adequately provide for his family.

70.     Defendant NYSDHR is vicariously liable for Defendants Rubio and Martinez's

fraudulent representation that resulted in Plaintiff's termination because they are agents of

Defendant NYSDHR and were acting in their official capacity at the time.

### THIRD CLAIM FOR RELIEF

**[Hostile Work Environment Based on Race, Sex, and National Origin in Violation of Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]**

71.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 70

above, as if fully set forth herein.

72.     The Court has described harassment as a form of employment discrimination when it involves unwelcome and offensive conduct that is severe or pervasive enough to create a hostile, intimidating or abusing work environment that made it difficult for the employee to carry out his/her duties. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993).  Plaintiff alleges that during his employment at HIU, Defendants Rubio, Martinez, Jafri, Carrasquillo, Ploski, and Ortiz-Feliciano subjected him to unwelcome and offensive conduct that altered the conditions of his employment, including but not limited to, misrepresentation; put downs; intimidation; threats; false evaluations; improper interference with work performance; improper extension of probation; false evaluation; and failing to follow civil service rules and procedures.

### *Defendant Rubio's harassing conduct*

73.     Defendant Rubio improperly interfered with Plaintiff's work performance when on 10/3/2019, she instructed Defendants Ploski and Carrasquillo to deny him permission to conduct scheduled field visits even though she was out on leave and Plaintiff had previously informed her about the subject visits without any objection from her.  It should be noted that conducting field visits is one of the unique tools that investigators are encouraged to utilize in conducting investigations.  Field visit does not only allow an investigator to observe the circumstances surrounding the subject matter, but it also provides the opportunity for investigators to conduct in-person interviews with the parties and witnesses.  In fact, field visit is one of the most reliable tools for timely completion of investigations.  Defendant Rubio collaborated and worked in cahoots with Defendants Ploski and Carrasquillo in preventing Plaintiff from conducting the subject field visits so as to prevent Plaintiff from meeting the case production output that was required of him to complete during his extended probation period.

74.     Defendant Rubio improperly interfered with Plaintiff's work and performance when she, subjected Plaintiff to heightened and unreasonable scrutiny that only started during the second quarter of his extended probation.  Defendant Rubio will repeatedly return numerous cases on multiple occasions for further review or investigation.  After Plaintiff made all corrections as requested, Defendant Rubio would repeatedly make additional review requests that were either irrelevant to the investigation or that she could have made during her initial review of the cases.  In case # 10200634, Defendant Rubio repeatedly returned the case for review on at least five occasions to the extent that she even returned the case for further review after the case had officially closed.  Plaintiff believes that Defendant Rubio's action was calculated to delay Plaintiff's completion of the cases to obstruct Plaintiff from meeting the total case production that was required of him in order to pass his extended probation.

75.     Defendant Rubio improperly interfered with Plaintiff's work and performance by including false information on Plaintiff's probation reports.  In Plaintiff's first quarter extended probation report dated 8/1/2019, Defendant Rubio inaccurately indicated that Plaintiff submitted 25 cases during the period instead of the actual 27 cases Plaintiff submitted.  Even after Plaintiff appraised Defendant Rubio of the inaccuracy and she confirmed that Plaintiff submitted 27 cases, Defendant Rubio refused to correct the inaccuracy on Plaintiff's probation report.  Rather, Defendant Rubio falsely stated that she did not include the last two cases Plaintiff submitted because they were yet to be closed.  However, case submission had always been used to determine monthly case production for all investigators on the unit.  In contradiction to Defendant Rubio's assertion, some of the cases she included in Plaintiff's total case production

for the first quarter of his extended probation were also yet to be closed.  Moreover, after an HRS I submits a case to his or her supervisor, the supervisor is solely responsible for the proceeding protocol that are needed to close the case.  Plaintiff believes that Defendant Rubio's conduct was calculated to justify her explanation that Plaintiff failed to complete the required number of cases, and the failure to make Plaintiff's appointment permanent as promised upon his completion of 27 cases during the first quarter of his extended probation.

76.     Defendant Rubio interfered with Plaintiff's work performance when she made incorrect, contradictory, and false statements in Plaintiff's second quarter extended probation report dated 10/10/2019.  In the report, Defendant Rubio asserted that they decided to terminate Plaintiff, two weeks before the end of his extended probation due to unsatisfactory performance and insubordination.  Defendant Rubio stated among other things, that Plaintiff failed to improve his written expression, failed to meet his case production requirement, and failed to follow supervisory suggestions.  However, the record shows that prior to this final evaluation, Plaintiff had received satisfactory rating in all the 14 categories of performance evaluation for all the five preceding evaluations and no significant incident occurred during the last quarter of Plaintiff's employment that could justify the drastic swing in the evaluation of Plaintiff's performance.  Moreover, Plaintiff had consistently been commended for his written expression as indicated by Plaintiff's first five probation reports and from the agency's hearing officers.  In fact, if Defendant Rubio had inquired about Plaintiff's progress during the final quarter of his extended probation, she would have seen that Plaintiff was on pace to meet the total case production that was required of him for his extended probation.  Additionally, Plaintiff was never a subject of any disciplinary action, including insubordination throughout his employment at NYSDHR.

77.     Defendant Rubio interfered with Plaintiff's work performance when she failed to advise Plaintiff about his status and progress in accordance to the Civil Service Rule 4.5 during the final quarter of his extended probation period before abruptly terminating his employment.  On 10/10/2019, Plaintiff was called into Defendant Jafri's office where Defendant Rubio was waiting without having informed Plaintiff of the meeting.  Defendant Jafri informed Plaintiff that his appointment was being terminated with immediate effect and Defendant Rubio handed him a copy of his final probation report.  However, prior to this day, Plaintiff had not been appraised by Defendant Rubio or any supervisory or management staff about his performance or told that he was performing below expectation or informed that he was at risk of being terminated. Defendant Rubio failed to follow the civil service rules and regulations.

78.     Plaintiff believes that Defendant Rubio engaged in the harassing conduct to undermine his performance, impede his capacity to meet his case production requirement, hinder his capacity to fulfil the tasks and standards for his position, and to justify the malicious termination of his employment.

### *Defendant Martinez's harassing conduct*

79.     Defendant Martinez improperly interfered with Plaintiff's work and performance when on 8/1/2019, she misrepresented a task and standard for the HRS 1 position.  Defendant Martinez incorrectly insisted  that the word "complete," in the task and standard meant that cases must be "closed" and not just "submitted" before it would be counted towards Plaintiff's total case production for the first quarter of his extended probation.  However, case submissions had always been used to determine total case production for all investigators on the unit.  Prior to this

first quarter extended probation review, Plaintiff had received four probation reviews wherein his total case production for each of the four probation periods were calculated based on the number of cases he submitted.  Moreover, some of the cases that were counted toward Plaintiff's total case production for this first quarter extended probation period were also yet to be closed.  The record contradicts Defendant Martinez's statement that cases had to be closed before it would be counted towards an HRS I's total case production.  Plaintiff believes that Defendant Martinez misinterpreted this policy to justify their continuation of Plaintiff's extended probation.

80.     Defendant Martinez subjected Plaintiff to threats and intimidation.  On 8/1/2019, Plaintiff complained to Defendant Martinez about being singled out and subjected to unfair treatment at the HIU because of protected classes.  Rather than taking corrective actions, Defendant Martinez responded by telling Plaintiff that she had a problem with his complaint. She informed Plaintiff that they have a flow on the HIU and that she felt that Plaintiff was not taking responsibility.  Defendant Martinez further stated that they needed someone who will "get with the program" and that she felt like Plaintiff did not have good relationship with his supervisors.  Defendant Martinez also stated that she felt that Plaintiff might not be the best fit for them, and that he may go somewhere else if he is unable to get along with his supervisors.  Plaintiff believes that Defendant Martinez's conduct was done with intent to threaten and intimidate Plaintiff.

81.     Defendant Martinez subjected Plaintiff to intimidation and humiliation when she forcibly removed Plaintiff from his work location.  At about 2:00 pm on 10/10/2019, after Defendant Jafri informed Plaintiff that his appointment had been terminated and that he should gather his

belongings and leave the premises by the closing of business, Defendant instructed security

officers to forcibly remove Plaintiff from the building before he could gather his belongings.

Consequently, many of Plaintiff's belongings remained in the office after he was abruptly

terminated and walked out of the office by security staff.  Plaintiff believes that Defendant

Martinez's conduct was intended to embarrass, disgrace, and humiliate Plaintiff.

### *Defendant Jafri's harassing conduct*

82.    Defendant Jafri improperly interfered with Plaintiff's work and performance by

misrepresenting the civil service law to deny Plaintiff a privilege of his employment.  On

4/17/2019, Plaintiff met with Defendant Jafri, and requested to be given a different assignment at

one of the NYSDHR's regional offices for his extended probation in accordance with the Civil

Service Rule 4.5.  Defendant Jafri denied Plaintiff's request while asserting that they have been

informed by the Governor's Office of Employment that an exception to Civil Service Rule 4.5

allows them not to change an employee's assignment for extended probation if it was not

possible.  Contrarily, nothing in the Civil Service rule supports Defendant Jafri's assertion and

Defendant Jafri was unable to produce such exception to Rule 4.5 upon request by the Plaintiff.

Moreover, the same HRS I positions were available at other regional offices of NYSDHR.

Plaintiff believes that Defendant Jafri fabricated this exception to deny Plaintiff a privilege of his

employment.

### *Defendant Carrasquillo's harassing conduct*

83.    Defendant Carrasquillo unreasonably interfered with Plaintiff's work performance by

extending Plaintiff's probation in spite of Plaintiff's satisfactory completion of the required 52-

week probationary term.  Plaintiff's probation report showed that Plaintiff satisfactorily

completed his 52-week probationary term as he received satisfactory rating in all the 14

categories of performance evaluation.  Yet, Defendant Carrasquillo refused to retain Plaintiff, but rather extended his probation.  Plaintiff believes that Defendant Carrasquillo failed to follow civil service rules and regulations to deprive Plaintiff a permanent employment status.

84.     Defendant Carrasquillo interfered with Plaintiff's work performance when she refused to make Plaintiff's appointment permanent after he satisfactorily completed the minimum 12 weeks of extended probation.  During Plaintiff's 52-week probation review, Defendants Carrasquillo and Ploski informed Plaintiff that they were satisfied with his work and work product, and that the only reason they were extending his probation was to give him an opportunity to show that he was capable of completing an average of nine cases per month since they did not assign Plaintiff sufficient number of cases to meet that average during his 52-week probationary term. Defendants Carrasquillo and Ploski thereby, promised Plaintiff that they will make his appointment permanent if he was able to complete an average of nine cases per month during the first quarter of his extended probation.  During the first quarter of extended probation, Plaintiff completed a total of 27 cases.  Nonetheless, Defendant Carrasquillo refused to make Plaintiff's appointment permanent as promised.  Rather, she recommended that Plaintiff's probation be continued.  Defendant Carrasquillo breached an employment agreement by failing to fulfil her end of the bargain.  Plaintiff believes that Defendant Carrasquillo's conduct was arbitrary and done to deprive Plaintiff of a permanent employment status.

85.     Defendant Carrasquillo interfered with Plaintiff's work performance by refusing to assign or instruct Defendant Rubio to assign interns to Plaintiff during his extended probation period. During Plaintiff's extended probation, Defendant Rubio refused to assign any intern to assist

Plaintiff with his investigation while other similarly situated HRS Is had one or more interns assigned to assist them.  When Plaintiff brought this to the attention of Defendant Carrasquillo, who at the time, was the acting director of investigations, she did nothing to remedy the issue. Rather, she told Plaintiff that Defendant Rubio was in charge of the interns and that he should take his complaint up with her.  Plaintiff believes that Defendant Carrasquillo's action or inaction was done to hinder his work performance and as such, denied him a privilege of employment that were afforded to other similarly situated HRS Is.

### *Defendant Ploski's harassing conduct*

86.     Defendant Ploski subjected Plaintiff to put downs, intimidation, and threats.  On or around 9/7/2018, Defendant Ploski unnecessarily scolded Plaintiff for failing to complete three LOJ cases on 8/31/2018, the same day the cases were assigned to Plaintiff.  Defendant Ploski accused Plaintiff of being "lackadaisical" and not appreciating the time-sensitive needs of the unit and further informed Plaintiff that if he was given a task, it had to be done immediately. Defendant Ploski made these statements in spite of the fact that it was Defendant Ploski, who on the day in question, instructed Plaintiff to set aside the three LOJ cases and focus on completing the last of the cases that Plaintiff was mandated to complete by the end of August 2018, that same day.  Nonetheless, Defendant Ploski later apologized and informed Plaintiff that he never intended to scold Plaintiff about the LOJ cases and that the reason he scolded Plaintiff was because he was instructed to do so by Defendant Ortiz-Feliciano.  Plaintiff believes that Defendant Ploski engaged in the harassing conduct to intimidate him, undermine his character, conduct, and work performance.

87.     Defendant Ploski subjected Plaintiff to threats and intimidation when on 9/7/2018, Plaintiff complained that he was being subjected to unfair treatment at HIU.  Rather than taking corrective measures, Defendant Ploski responded by informing Plaintiff that even if he was justifiably upset with any employee having a superior position, he should keep it in his mind and not express how he felt.  Defendant Ploski further advised Plaintiff that they cannot have people that are unhappy or felt abused at HIU and that he would no longer help Plaintiff with any cases and would not assign Plaintiff any easy cases.  Plaintiff believes that Defendant Ploski engaged in the harassing conduct to terrify and intimidate him, and to undermine his work performance by making it difficult for him to carry out his duties.

88.     Defendant Ploski interfered with Plaintiff's work performance by denying him supervisory guidance and by failing to make his employment permanent in spite of Plaintiff's satisfactory completion of his required 52-week probationary term.  Plaintiff's probation report dated 4/15/2019, showed that Plaintiff satisfactorily completed his 52-week probationary term as he received satisfactory rating in all the 14 categories of performance evaluation.  Yet, Defendant Ploski recommended that Plaintiff's probation be extended.  Plaintiff believes that Defendant Ploski failure to retain his employment was arbitrary and done in violation of civil service rules and regulations and to deny him a permanent employment status.

### *Defendant Ortiz-Feliciano's harassing conduct*

89.     Defendant Ortiz-Feliciano improperly misrepresented Plaintiff by informing Deputy Commissioner Martinez that Plaintiff told her that he could not close more than five cases a month.  Contrarily, on or around 8/3/2018, Plaintiff had informed Defendant Ortiz-Feliciano that he could only take credit for five of the seven cases he submitted for the month of July 2018

because an intern completed one of the cases and one was an LOJ case that did not require any
investigation in order to be completed. Plaintiff made this statement after Defendant Ortiz-
Feliciano told him that his seven case submissions was the highest submitted by any investigator
for that month and that she expected Plaintiff to submit at least seven cases per month moving
forward based on his submissions in July 2018. Plaintiff believes that Defendant Ortiz-Feliciano
made this misrepresentation before the Deputy Commissioner to undermine his character and
conduct and to place his employment in jeopardy.

90.     Defendant Ortiz-Feliciano interfered with Plaintiff's work performance by unreasonably
instructing Defendant Ploski to scold Plaintiff for failing to complete three assigned LOJ cases
on 8/31/2018, in spite of the fact that Plaintiff was instructed by Defendant Ploski to focus on
completing the final report on one of  the four cases that Defendant Ortiz-Feliciano had
mandated him to complete by the end of August 2018, that same day. Plaintiff completed the
last mandated case past the closing of business and could not get to the assigned LOJ cases on
that day. However, about a week later, Defendant Ploski scolded Plaintiff for not completing the
LOJ cases on 8/31/2018. Defendant Ploski accused Plaintiff of being "lackadaisical," and not
appreciating the time-sensitive needs of the unit and further informed Plaintiff that if he was
given a task, it had to be done immediately. Defendant Ploski made these statements in spite of
the fact that he was the one who instructed Plaintiff to focus of completing the last mandated
case and get to the LOJ cases later. However, on 9/13/2018, Defendant Ploski apologized and
informed Plaintiff that he never intended to scold Plaintiff about the LOJ cases but did so
because he had to go back and report to Defendant Ortiz-Feliciano, who had previously
instructed him to scold Plaintiff for not completing the LOJ cases. Plaintiff believes that

37

Defendant Ortiz-Feliciano engaged in the harassing conduct to intimidate him; undermine his performance, character, and conduct; and to hinder his capacity to fulfil the tasks and standards for his position.

91.     Defendants Rubio, Martinez, Carrasquillo, Ortiz-Feliciano, Ploski, and Jafri's harassing conduct were severe and pervasive that they altered the condition of Plaintiff's employment.

92.     Plaintiff's multiple complaints to supervisory and management employees did not cause the named Defendants to refrain from the unlawful employment practices.

93.     Plaintiff's race, sex, and national origin were the determining factor and/or a motivating factor in Defendants' adverse employment action as other similarly situated HRS Is were not subjected to the same adverse treatment.

94.     Management level employees knew, or should have known, of the harassing conduct and did not exercise reasonable care to prevent the creation of a hostile work environment and did not exercise reasonable care to stop the adverse treatment of Plaintiff, even after Plaintiff's repeated opposition to it.

95.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right.

96.      As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff

sustained physical, mental, economic, and emotional injuries, resulting in damages, including

having to perform under a hostile work environment, being unnecessarily subjected to prolonged

probation, and terminated for illegitimate reasons.


97.      Defendant NYSDHR is liable for the harassing conduct of the named Defendants because

they are agents of Defendant NYSDHR and were acting in their official capacity at the time they

engaged in the conduct.


## FOURTH CLAIM FOR RELIEF

**[Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.
§ 2000e-3(a)]**

98.      Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 97

above, as if fully set forth herein.


99.      Title VII of to the Civil Rights Act of 1964, as amended, prohibits employers from

discriminating against an employee because the employee has opposed any unlawful

employment practice. 42 U.S.C. § 2000e-3(a).  Plaintiff alleges that Defendants Martinez,

Carrasquillo, Rubio, Ortiz-Feliciano, Ploski, and Jafri, individually and collectively subjected

him to adverse treatment in retaliation for opposing unlawful employment practices which

commenced around July 2018 and progressively escalated till Plaintiff was terminated on

10/10/2019.  Plaintiff opposed the unlawful practices by complaining to management, human

resources, union representative, writing a grievance letter to HR, and by declining to sign inaccurate and false evaluations.

100.    On 8/27/2018, Plaintiff complained to Deputy Commissioner Martinez about Defendant Ortiz-Feliciano's improper conduct wherein Defendant Ortiz-Feliciano misrepresented Plaintiff's statement by informing Deputy Commissioner Martinez that Plaintiff told her that he could not close more than five cases a month.  Contrarily Plaintiff had informed Defendant Ortiz-Feliciano that he could only take credit for five of the seven cases he submitted for the month of July 2018 when Defendant Ortiz-Feliciano told Plaintiff that moving forward, she expected him to submit a minimum of seven cases per month based on Plaintiff's submissions for the month of July 2018, because an intern completed one of the cases and one was an LOJ case that did not require any investigation to complete.  Plaintiff believes that Defendant Ortiz-Feliciano misrepresented him to undermine his character before the Deputy Commissioner in retaliation for Plaintiff's successful challenge of Defendant Ortiz-Feliciano's insistence that Plaintiff's change his probable cause determination in case # 10192811 because she thought the case lacked sufficient evidence to support a probable cause finding. However, upon Plaintiff's request and consequent telephone conference with the probable cause review unit, Plaintiff's determination in the subject case was approved.  Defendant Ortiz-Feliciano seemed upset about the outcome and accused Plaintiff of advocating for the Complainant who was of Plaintiff's protected classes.  This incident marked the beginning of Plaintiff's traumatic experience at the HIU of the NYSDHR.

101.    Plaintiff's complaint to Deputy Commissioner Martinez about Defendant Ortiz-Feliciano's conduct was immediately followed by harassing intimidation and interference with

40

Plaintiff work performance, including requiring Plaintiff to conduct investigation into allegations that were not alleged in some complaints, demanding that Plaintiff conduct additional visit to a shelter that placed Plaintiff's safety in jeopardy. Also, on or about 8/31/2018, Defendant Ortiz-Feliciano unreasonably instructed Defendant Ploski to scold Plaintiff for failing to complete three LOJ cases on 8/31/2018 in spite of the fact that the LOJ cases were assigned to Plaintiff on that same day, and Plaintiff was also instructed by Defendant Ploski to set aside the LOJ cases and focus on completing the final report on one of the four cases that Defendant Ortiz-Feliciano had mandated him to complete by the end of that day, and in spite of the fact that Plaintiff had to work pass his regular hours to complete the mandated case.

102.    On 9/13/2018, Plaintiff complained to Defendant Ploski about Defendant Ortiz-Feliciano's harassing intimidation and interference with his work performance and that he was being singled out and subjected to unfair treatment at HIU. Rather than address Plaintiff's concern, Defendant Ploski proceeded by subjecting Plaintiff to intimidation and threats. Defendant Ploski informed Plaintiff that even if he was justifiably upset with any employee having a superior position, he should keep it in his mind and not express how he felt. Defendant Ploski further advised Plaintiff that they cannot have people that are unhappy or felt abused at HIU, and that he would no longer help Plaintiff with any cases and would not assign Plaintiff any easy cases. Plaintiff believes that Defendant Ploski subjected Plaintiff to such intimidation and threat in retaliation against him for complaining about being subjected to unfair treatment at HIU. Thereafter, Defendant Ploski rarely provided Plaintiff with needed supervisory guidance.

103.    In September 2018, Plaintiff met with the PEF Union Representative, Bellew McManus and complained about being singled out and subjected to put down, intimidation and threats from Defendants Ortiz-Feliciano and Ploski.  Plaintiff also inquired about how the union could help his predicament but was informed by Mr. McManus that the union could not do anything for him as he is still a probationary employee.  Mr. McManus stated that he would speak to Defendant Carrasquillo and Ploski on his behalf to resolve the issue.  However,  Mr. McManus's effort did not resolve the issue as the harassing intimidation, put downs and threats continued.

104.    On 4/15/2019, Plaintiff's 52-week probationary review was conducted by Defendants Carrasquillo and Ploski.  Despite Plaintiff receiving satisfactory rating in all areas of performance evaluation,  Defendants Carrasquillo and Ploski recommended that Plaintiff's probation be extended even after explaining that they were satisfied with Plaintiff's work.  They stated that they decided to extend Plaintiff's probation because he did not complete a minimum of 108 cases during the period even though Plaintiff was not assigned up to 108 cases.  Plaintiff believes that Defendants Carrasquillo and Ploski's decision was done in retaliation for Plaintiff's opposition to the harassing conduct by complaining to management and union representative. Plaintiff further opposed Defendants Carrasquillo and Ploski's actions by declining to sign the probation report, requesting a meeting with HR and the Union Representative, and by writing a grievance letter to HR in opposition to the recommendation to extend his probation.

105.    On 4/26/2019 and 4/27/2019, Plaintiff complained to Defendant Jafri that he was being singled out and subjected to unfair treatment by management staff at HIU, including the put downs, intimidation, improper evaluation by Defendants Elizabeth-Ortiz, Carrasquillo, and

42

Ploski.  Plaintiff further requested to be reassigned to a different NYSDHR regional office for his extended probation because he did not believe he could receive a fair evaluation if he remained at HIU.  Rather than addressing Plaintiff's concern, Defendant Jafri simply informed Plaintiff that he cannot be transferred to a regional office.  Defendant Jafri explained that the Governor's Office of Employment had informed them that an exception to the applicable Rule 4.5 allows them to deny an employee a transfer for extended probation because it was not possible.  Defendant Jafri further presented Plaintiff an offer for extended probation and informed Plaintiff that if he refused to accept the offer, he will be terminated within a week.  Plaintiff believes that Defendant Jafri's action was carried out in cahoots with the management of HIU in retaliation for Plaintiff's continued opposition to unfair treatment.

106.    On 7/26/2019, Plaintiff's first quarter extended probation review was conducted.  Prior to accepting the offer for extended probation, Defendants Carrasquillo and Ploski had promised to make Plaintiff's appointment permanent after the first quarter of his extended probation if he completed an average of nine cases per month during the period.  Plaintiff completed a total of 27 cases during the period.  Nonetheless, Plaintiff's appointment was not made permanent, but his extended probation was rather continued.  Defendant Rubio excluded the last two cases Plaintiff submitted for the period to justify her explanation that Plaintiff failed to meet the case submission requirement for the period and their failure to make his employment permanent as promised.  Plaintiff believes that Defendants Carrasquillo and Rubio failed to fulfil the promise by continuing Plaintiff's extended probation in retaliation for Plaintiff's continued opposition to unfair treatment at HIU.  Plaintiff further opposed Defendants Carrasquillo and Rubio's

43

improper evaluation by refusing to sign the report and requesting a meeting with Deputy

Commissioner Martinez to challenge the discrepancies in the probation report.


107.    On 8/1/2019, Plaintiff complained to Defendant Martinez that he was being singled out

and subjected to unfair treatment at HIU, including the failure to fulfil the promise to make his

appointment permanent, the inaccurate information included in his first quarter extended

probation report and the improper recommendation to continue his extended probation.  Instead

of taking corrective actions, Defendant Martinez's response was to inform Plaintiff that she had a

problem with his complaint.  She stated that they have a flow on the HIU and that she felt that

Plaintiff was not taking responsibility.  Defendant Martinez further stated that they needed

someone who will "get with the program" and that she felt like Plaintiff did not have good

relationship with his supervisors.  Defendant Martinez also stated that she felt that Plaintiff might

not be the best fit for them, and that Plaintiff may go somewhere else if he is unable to get along

with his supervisors.  Plaintiff believes that Defendant Martinez's conduct was done in cahoots

with the HIU management and with intent to intimidate him, and in retaliation for Plaintiff's

continued opposition to the unfair treatment he was being subjected to at HIU.


108.    Following Plaintiff's meeting with Deputy Commissioner Martinez, the unfair treatment

of Plaintiff at HIU escalated to among other things, false accusations, persistent interference with

work performance, misrepresentations, fabricated information, false evaluations, and subsequent

termination.  On or around 8/19/2019, Defendant Rubio accused Plaintiff of being absent without

leave or informing anyone of his whereabout on 8/16/2019.  However, email record shows that

Plaintiff did informed Defendant Rubio before leaving for the scheduled field visit and Plaintiff further wrote his whereabouts on the general unit calendar per office protocol.

109.    Defendant Rubio also started subjecting Plaintiff to heightened and unreasonable scrutiny throughout the second quarter of his extended probation by repeatedly returning numerous cases on multiple occasion for further review or investigation.  Even after Plaintiff made all corrections as requested, Defendant Rubio would repeatedly make additional review requests that were either irrelevant to the investigation or that she could have made during her initial review of the cases.  In case # 10200634, Ms. Rubio repeatedly returned the case for review on at least five occasions to the extent that she even carelessly returned the case for further review after the case had officially closed.  Plaintiff was never subjected to such scrutiny in the preceding five quarter of his employment at HIU.

110.    On or around 9/4/2019, Plaintiff met with Mr. LaMot, who was brought over from one of NYSDHR's Brooklyn office to serve as the interim Director of Investigations after Defendant Ortiz-Feliciano was demoted.  Plaintiff explained all his experience of unfair treatment at HIU, as Mr. LaMot was not privy to his experience.  Plaintiff further complained to Mr. LaMot that he did not believe that he would receive a fair evaluation at the conclusion of his extended probation, due to the unfair treatment he was being subjected to at HIU.  Plaintiff asked Mr. LaMot to help address his concerns and he responded by informing Plaintiff that he would meet with management, see what they have to say and get back to Plaintiff.

111.    Whatever effort Mr. LaMot made did not cause the unfair treatment of Plaintiff to stop.
The unfair treatment rather intensified as Plaintiff got to within a month of completing his
extended probation.  On 10/3/2019, Defendants Carrasquillo and Ploski refused to allow Plaintiff
to go out on scheduled field visits.  They explained that Defendant Rubio, who was out on leave,
had instructed them not to allow Plaintiff to go on the field visits without anyone accompanying
him.  However, no one on the unit, including Defendants Ploski and Carrasquillo, expressed
being available to accompany Plaintiff to the field visits.  Prior to the last couple of weeks of his
employment, Plaintiff had conducted most of his field visit alone and without any push back
whatsoever from Defendant Rubio or any other management staff at HIU.

112.    On or around 10/7/2019, Defendant Rubio falsely accused Plaintiff of refusing to conduct
a second field visit for case # 10201173. Contrarily, Defendant Rubio had informed Plaintiff on
10/2/2019 to first send witness letters to the tenants and a second request for additional
information to the Respondents in the case before scheduling a second field visit.  The records
will show that Plaintiff followed Defendant Rubio's instruction.  Moreover, if this allegation was
true, then why was Plaintiff not reprimanded and why did Defendant Rubio waited till
10/7/2019, five days after her alleged incident before sending Plaintiff an email about it.
Plaintiff responded by sending Defendant Rubio a return email denying her allegation and
explaining the events regarding the proposed second field visit for case # 10201173.

113.    Defendant Rubio also falsely accused Plaintiff of sending an email to his supervisor on
10/3/2019 insisting that he should be able to conduct field visit alone.  Contrarily, Plaintiff had
sent an email to the Deputy Commissioner Martinez after he was denied permission to conduct

scheduled field visits by Defendants Rubio, Carrasquillo, and Ploski. In the email, Plaintiff complained about the denial and informed Defendant Martinez that the 100-day mark to timely complete the cases was at hand. Plaintiff also informed Defendant Martinez that prior to this denial of permission, that he had conducted most of his field visits alone and without any pushbacks. Plaintiff further reminded Defendant Martinez that the end of his extended probation was at hand, and that refusing to allow him to conduct the scheduled field visits would hinder his capacity to meet the total case production that was required of him to pass probation.

114.    Furthermore, on 10/10/2019, and without any prior notice or having advised Plaintiff about his status and progress during the final quarter of his extended probation in accordance to the Civil Service Rule 4.5, Defendant Jafri called Plaintiff to his office wherein Defendant Rubio was waiting in a conference room. Defendant Jafri informed Plaintiff that he was instantly being terminated due to unsatisfactory service and that Plaintiff had till the end of that workday to remove his personal belongings. Defendant Rubio handed Plaintiff a copy of the final probation report dated 10/10/2019. In the report, Plaintiff was given unsatisfactory rating in ten of the 14 categories of performance evaluation and a recommendation that his appointment be terminated. Plaintiff declined to sign the report. Also, before Plaintiff could gather his personal belongings, Defendant Martinez instructed security staff to forcibly remove Plaintiff from the building. Consequently, many of Plaintiff's personal belongings remained in the office.

115.    In the final evaluation report, Defendants Rubio and Martinez  made incorrect, contradictory, and false statements fabricated to support their maliciously proffered reasons for terminating Plaintiff's employment. Defendants Rubio and Martinez proffered that they

terminated Plaintiff two weeks before the end of his extended probation due to unsatisfactory work performance and insubordination. They stated among other things, that Plaintiff failed to improve his written communication, that Plaintiff had not shown that he was able to complete timely investigation, that Plaintiff had not shown he could manage his workload efficiently, and that Plaintiff had not shown that he was able to adhere to the rules of the unit. However, the record shows that prior to this final evaluation, Plaintiff had received satisfactory rating in all the 14 categories of performance evaluation for all the five preceding evaluations and no significant incident occurred during the last quarter of Plaintiff's employment. Defendants Rubio and Martinez failed to provide any meaningful rationale that could justify the drastic swing in their evaluation of Plaintiff's work performance from 8/1/2019 to 10/10/2019. They rather pointed to incidents that Defendant Rubio alleged occurred on 5/15/2019 and on 6/11/2019. If these incidents were true as she alleged, they would and should have been addressed in the probation evaluation that followed on 8/1/2019.

116.    Furthermore, if Defendant Rubio had inquired about Plaintiff's progress, she would have recognized that Plaintiff was on pace to meet the total case production that was required of him during his extended probation. Records will show that Plaintiff completed 27 cases during the first quarter of his extended probation. Additionally, during the second and final quarter of his extended probation, Plaintiff had a total of 27 on his caseload. At the time of his termination, 18 of the cases had either been completed or awaiting supervisory review. Thus, there were only nine cases left on his caseload of which Plaintiff had for the most part completed their investigations and was in the process of completing their respective final investigation reports before he was abruptly terminated. A review of the records will further reveal that throughout

his employment at HIU, Plaintiff was assigned a total of one hundred and thirty-five cases of which Plaintiff had completed about one hundred and twenty-six and was on track to complete the remaining nine cases by the end of his extended probationary term.  In essence, Plaintiff was on pace to clear his caseload.  Moreover, throughout Plaintiff's employments at NYSDHR, he was never a subject of any disciplinary action, including insubordination.

117.    Defendants Rubio and Martinez failed to articulate a legitimate nondiscriminatory reason for terminating Plaintiff's employment.  Their proffered reasons for terminating Plaintiff were inaccurately, contradictory, and falsely provided without any supporting evidence.  Their reasons are unworthy of credence and constitute a pretext for their unlawful employment actions.

118.    Causal connection is evident in that Plaintiff's participation in protected activity by repeatedly complaining to management, human resources, union representative; by writing a grievance letter to HR; and by declining to sign off on inaccurate and false evaluations. Plaintiff's oppositions were followed closely by discriminatory treatment from the named Defendants until Plaintiff was subsequently terminated.

119.    Plaintiff's multiple complaints to supervisory and management employees did not cause Defendants to refrain from the unlawful employment practices.

120.    Management level employees knew, or should have known, of the unlawful practices and did not exercise reasonable care to prevent them and did not exercise reasonable care to stop the adverse treatment of Plaintiff, even after Plaintiff's repeated opposition to it.

49

121.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right.

122.    As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff sustained physical, mental, economic, and emotional injuries, resulting in damages, including chronic chest pain, high blood pressure, severe anxiety, difficulty sleeping, depression constant worries, loss of employment, and upon Plaintiff's termination his condition persisted due to difficulties in finding other employment and his inability to adequately provide for his family.

123.    Defendant NYSDHR is vicariously liable for the named Defendants retaliatory conduct because they are agents of Defendant NYSDHR and were acting in their official capacity at the time they engaged in the conduct.

## FIFTH CLAIM FOR RELIEF

### [Breach of Contract]

124.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 123 above, as if fully set forth herein.

125.    The Court has held that a party asserting a breach will prevail, if the evidence shows, (1) the existence of a contract; (2) the moving party's performance under the contract; (3) the defending party's breach; and (4) resulting damages. *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 239, 893 N.Y.S.2d 237 (2d Dep't 2010).

126.    Plaintiff alleges that Defendants Carrasquillo and Ploski breached an implied contract of employment by promising and failing to make his employment permanent after he satisfactorily completed three months of his extended probation and submitted 27 cases.  During Plaintiff's 52-week probationary review, Defendants Carrasquillo and Ploski informed Plaintiff that they will make his appointment permanent after the first quarter of the extended probation on the condition that Plaintiff completed an average of nine cases per month during the period.  Plaintiff completed a total of 27 cases as required but his employment was not made permanent as promised.  Plaintiff's probation was rather continued.  Plaintiff believes that the failure to retain his employment constituted a breach of the verbal agreement Defendants Carrasquillo and Ploski made to him in their official capacity at the time they extended Plaintiff's probation.

127.    Plaintiff further alleges that Defendants Carrasquillo, Ploski, Jafri, and Rubio breached an expressed employment contract by failing to follow civil service rules and regulations.  As clearly expressed in Plaintiff's appointment letter dated 4/9/2018, Plaintiff's appointment was subject to the civil service rules and regulations.  Defendants Carrasquillo, Ploski, Jafri, and Rubio breached the agreement by violating the applicable civil service rules and regulations in subjecting Plaintiff to adverse employment practices.  Defendants Carrasquillo and Ploski breached the agreement by failing to retain Plaintiff's employment upon his satisfactory completing of the required 52-week probation; Defendant Jafri breached by denying Plaintiff request for reassignment at other regional offices for his extended probation and fabricating a non-existing exemption to Rule 4.5 to justify his denial; and Defendant Rubio breached by

failing to advise Plaintiff about the status and progress of his probation during the final quarter of his employment before abruptly terminating him.

128.    Management level employees knew, or should have known, of the improper conduct and did not exercise reasonable care to right the wrong.

129.    As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff was unreasonably subjected to continued probation in a hostile environment and denied permanent employment status.

130.    Defendants Carrasquillo and Ploski are liable in their individual capacity and Defendant NYSDHR is vicariously liable because then named Defendants are agents of Defendant NYSDHR and were acting in their official capacity at the time they promised to make Plaintiff's employment permanent and at the time they violated the civil service rules and regulations in subjecting Plaintiff to unlawful employment practices.

## SIXTH CLAIM FOR RELIEF

### [Promissory Estoppel]

131.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 130 above, as if fully set forth herein.

132.    Promissory estoppel under New York law requires "(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made;

and (3) an injury sustained by the party asserting the estoppel. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 78 (2d Cir. 1984).  Plaintiff alleges that Defendants Carrasquillo and Ploski should be estopped from denying their promise to make Plaintiff's employment permanent after the first quarter of his extended probation.

133.    During Plaintiff's 52-week probationary review, Defendants Carrasquillo and Ploski informed Plaintiff that if he accepted the offer for extended probation, that they will make his appointment permanent after the first quarter of the extended probation on the condition that Plaintiff completed an average of nine cases per month during the period.  Plaintiff relied on the promise by taking all steps to ensure that he completed at least 27 cases during the period.  In addition to putting in extra hours, Plaintiff also cut short his bereavement leave after his mother and brother passed away during the first quarter of his extended probation.  Plaintiff completed a total of 27 cases as required, but his employment was not made permanent as promised.  Rather, his extended probation was continued.  In the interest of justice Defendants Carrasquillo and Ploski should be estopped from refusing to carry out their promise.

134.    Management level employees knew, or should have known, of the improper conduct and did not exercise reasonable care to right the wrong.

135.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right.

136.    As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff was unreasonably subjected to continued probation in a hostile environment and denied permanent employment status.

137,    Defendants Carrasquillo and Ploski are liable in their individual capacity and Defendant NYSDHR is vicariously liable because Defendants Carrasquillo and Ploski are agents of Defendant NYSDHR and were acting in their official capacity at the time they promised to make Plaintiff's employment permanents.

## **SEVENTH CLAIM FOR RELIEF**

### **[Interference with Contractual Relationship]**

138.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 137 above, as if fully set forth herein.

139.    Under the New York Law, it is considered a tortious interference of contractual relationship where a third party intentionally engaged in malicious, dishonest, unfair, or improper conduct that interfered with an employee's employment relationship and caused injury to the relationship. *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003).  Plaintiff alleges that Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Ploski, Rubio, and Jafri, in their individual and official capacity unlawfully interfered with Plaintiff's employment relationship with the New York Civil Service and the State of New York by engaging in wrongful acts that caused Plaintiff to be subjected to harassing conduct, prolonged probation, and termination.

140.    Defendants Carrasquillo and Ploski interfered with Plaintiff's contractual relationship by extending Plaintiff's probation term based on unequal terms and conditions that other similarly situated HRS Is were not subjected to.  Defendants Carrasquillo and Ploski interfered by failing to make Plaintiff's employment permanent after he successfully completed the required 52-week probationary term in accordance to the applicable civil service rule.  Defendants Carrasquillo and Ploski interfered by requiring Plaintiff to complete more cases that he was assigned in order to pass probation, and by failing to make Plaintiff's appointment permanent after the first quarter of extended probation in spite of their promise to do so if he completed 27 cases in the period.

141.    Defendants Martinez and Rubio interfered with Plaintiff's contractual relationship by subjecting Plaintiff to terms and conditions that other similarly situated HRS Is were not subjected to.  During Plaintiff's first quarter extended probationary evaluation, Defendants Martinez and Rubio misinterpreted the word "complete" written in the tasks and standards for the HRS I position, to mean that cases must be closed in the Agency's case management system and not just submitted to his supervisor before it would be counted towards Plaintiff's total case production to justify their refusal to make his appointment permanent as promised.  However, case submissions had been used to determine Plaintiff's total case production for his preceding evaluations as well as the case production of other HRS Is.  Contradictorily, some of the cases that Defendant Rubio counted towards Plaintiff's total case production for the first quarter of his extended probation period were also yet to be closed.

142.    Defendant Jafri interfered with Plaintiff's contractual relationship by misrepresenting the civil service rule in denying Plaintiff's request to be reassigned to a different regional office for

his extended probation due to concerns about unfair treatment at HIU.  Defendant Jafri asserted

that it was not possible to move Plaintiff because they have been informed by the Governor's

Office of Employment that an exception to Civil Service Rule 4.5 allows them to refuse

changing an employee's assignment for extended probation if it was not possible.  However, the

same HRS I positions were available at other regional offices and Defendant Jafri was unable to

provide his stated exception upon request.

143.    Defendants Martinez and Rubio interfered with Plaintiff's contractual relationship by

terminating his employment based on a false evaluation that included inaccurate, contradictory,

and false statement fabricated to justify their reasons for recommending termination.  In

Plaintiff's final evaluation report dated 10/10/2019, Defendants Rubio and Martinez proffered

that they terminated Plaintiff two weeks before the end of his extended probation due to

unsatisfactory work performance and insubordination.  They stated among other things, that

Plaintiff failed to improve his written communication, that Plaintiff had not shown that he was

able to complete timely investigation, that Plaintiff had not shown he could manage his workload

efficiently, and that Plaintiff had not shown that he was able to adhere to the rules of the unit.

However, the record shows that Defendants Rubio and Martinez's assertions were grounded in

deception, falsehood, fabrication, dishonesty, and therefore unworthy of credence.  Prior to the

final quarter of employment, Plaintiff had received satisfactory ratings in all the 14 categories of

performance evaluation for all the preceding five quarterly evaluations, and at to time during his

employment was Plaintiff subjected to any reprimand for insubordination.

144.     None of the other similarly situated HRS Is at HIU were subjected to the same unequal

terms, conditions, and privileges, including Elizabeth Ortiz-Feliciano, Doris Gonzalez, Elena

Perlongo, Marleny Rubio, and Aimee May, all of whom are female of Hispanic descent except

for Aimee May who is of Asian descent.

145.     The named Defendants acted outside their scope of authority in interfering with

Plaintiff's contractual relationship with the NYS Civil Service and the State of New York.

146.     Management level employees knew, or should have known, of the Defendants'

interference but did not exercise reasonable care to stop it.

147.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with

reckless disregard to Plaintiff's right.

148.     As a direct, legal, and proximate result of this unlawful employment practice, Plaintiff

sustained physical, mental, economic, and emotional injuries, resulting in damages, including

loss of his employment with the State of New York and all the benefits that came with it.

## EIGHT CLAIM FOR RELIEF

### [Negligent Supervision]

149.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 148

above, as if fully set forth herein.

150.    In Zeak v. United States, the Court ruled that a Plaintiff can state a claim for negligent supervision or retention under New York law by showing in addition to the standard elements of negligence, (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises. *Zeak v. United States*, 11 Civ. 4253 (KPF) (S.D.N.Y. Jan. 20, 2015).

151.    Defendant NYSDHR owes a duty to Plaintiff to exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to Plaintiff.  Plaintiff alleges that Defendant NYSDHR was negligent in controlling working conditions and thus, vicariously liable for the unlawful conduct of management staff at HIU which resulted in Plaintiff's subjection to harassing conduct, the improper prolonging of Plaintiff's probation, and the subsequent termination of his employment.  Defendant NYSDHR was negligent in the supervision of Defendants Carrasquillo and Ploski's failure to make Plaintiff's appointment permanent in violation of the civil service rules and procedure; Defendant NYSDHR was negligent for Defendant Jafri's misrepresentation of the civil service rule to deny Plaintiff reassignment to a different regional office; Defendant NYSDHR was negligent for Defendant Rubio's exclusion of cases from Plaintiff's first quarter probation report and fabrication of information in Plaintiff's final report; and Defendant NYSDHR was negligent for Defendants Carrasquillo, Ploski, and Martinez's failure to respond to Plaintiff's repeated complaints of discriminatory treatment against him at HIU.

152.   Plaintiff's multiple complaints to supervisory and management employees did not cause Defendants to refrain from the unlawful employment practices.

153.   Management level employees knew, or should have known, of Defendants' unlawful employment practices and did not exercise reasonable care to prevent or stop the adverse treatment of Plaintiff, even after Plaintiff's repeated opposition to it.

154.   As a direct, legal, and proximate result of this unlawful employment practices, Plaintiff sustained physical, mental, economic, and emotional injuries, resulting in damages, including chronic chest pain, high blood pressure, severe anxiety, difficulty sleeping, depression, constant worries about being terminated, loss of employment; and upon Plaintiff's termination his condition persisted due to difficulties in finding other employment and difficulties in adequately providing for his family.

155.   The named Defendants are liable in their individual capacity and Defendant NYSDHR is vicariously liable because the named Defendants are agents of Defendant NYSDHR and were acting in their official capacity at the time they engaged in the conduct.

## NINTH CLAIM FOR RELIEF

### [Intentional Infliction of Emotional Distress]

156.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 155 above, as if fully set forth herein.

157.    Under New York Law, one can be held liable for Intentional Infliction of Emotional Distress (IIED) if they intentionally engage in extreme and outrageous conduct that result in injury to another. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  Plaintiff alleges that Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Ploski, Rubio, and Jafri subjected him to persistent harassment and discriminatory conduct including, but not limited to, put downs, intimidation, threats, misrepresentation, improper interference with work performance, false evaluations, denial of privileges, and subjection to unequal and impossible standards as alleged in Plaintiff's above Title VII claims.

158.    Plaintiff's multiple complaints to supervisory and management employees did not cause Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Ploski, Rubio, and Jafri to refrain from the unlawful employment practices.

159.    Management level employees knew, or should have known, of the harassing conduct and did not exercise reasonable care to stop the adverse treatment of Plaintiff, even after Plaintiff's repeated opposition to it.

160.    Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Ploski, Rubio and Jafri's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right.

161.    Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Ploski, Rubio, and Jafri's collective actions were so atrocious that they caused Plaintiff to sustain physical, mental, economic, and

emotional injuries, including chronic chest pain, high blood pressure, severe anxiety, difficulty sleeping, depression, constant worries about being terminated, loss of employment, and upon Plaintiff's termination his condition persisted due to difficulties in finding other employment and difficulties in adequately providing for his family.

162.    Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Ploski, Rubio, and Jafri are liable in their individual capacity and Defendant NYSDHR is vicariously liable because the named Defendants are agents of Defendant NYSDHR and were acting in their official capacity at the time they engaged in the conduct.

## DECLARATIVE RELIEF

163.    A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties.  Plaintiff contends that Defendants are liable for violating his rights under Title VII of the Civil Rights Act; for breach of contract; under the theory of promissory estoppel; for interference with contractual relationship; for negligent supervision; and for intentional infliction of emotional distress.  Plaintiff believes and thereon alleges that the Defendants deny these allegations.  Declaratory relief is therefore necessary and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.   For a declaration that Defendants' actions as alleged herein are unlawful;

2.   For a declaration that Defendants' actions as alleged herein violated Plaintiff's rights;

61

3. For general and compensatory damages, including interest;

4. For special damages including, both front and back pay, bonuses, and any other benefits to which Plaintiff would have been entitled to by reason of his employment;

5. For compensatory damages for Plaintiff's pain and suffering;

6. For punitive damages against Defendants Martinez, Carrasquillo, Ortiz-Feliciano, Rubio, Ploski, and Jafri;

7. For an affirmative injunction mandating the reinstatement of Plaintiff at a different State agency with full fringe benefits and seniority rights;

8. For an affirmative injunction enjoining Defendants from engaging in the unlawful acts complained herein and mandating the elimination of discriminatory practices in future;

9. For an affirmative injunction directing the Agency to subject Defendants Martinez, Carrasquillo, Ortiz-Feliciano, Rubio, Ploski, and Jafri; to extensive sensitivity, cultural competence, and human rights trainings;

10. For Plaintiff's reasonable fees and costs of this lawsuit; and

11. For such other and further relief as this Court deems just and proper.


Date: June 8, 2021

Respectfully Submitted,

ABEEB BALOGUN
Pro Se Plaintiff
17217 Jamaica Avenue 5B
Jamaica, New York 11432
(443) 600-0562
abeeb_balogun@hotmail.com

62

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: June 8, 2021

**ABEEB BALOGUN**

# Exhibit A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Abeeb K. Balogun, Esq.<br>17217 Jamaica Avenue<br>Apartment 5B<br>Queens, NY 11432 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1000<br>Philadelphia, PA 19107 |

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 520-2020-02219 | Legal Unit,<br>Legal Technician | (267) 589-9707 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Jamie R. Williamson_

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

September 25, 2020

(Date Mailed)

cc:   **John P. Herrion, Esq.**
**Associate Counsel**
**NEW YORK STATE DIVISION OF HUMAN RIGHTS**
**One Fordham Plaza, 4th Floor**
**Bronx, NY 10458**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

……………………………………………………..x

ABEEB BALOGUN

                                                    20 Civ. 10484 (LGS)

          Plaintiff,

-against-

NEW YORK STATE DIVISION OF HUMAN RIGHTS;
GINA MARTINEZ; ELIZABETH ORTIZ-FELICIANO;
IRIS CARRASQUILLO; MARLENY RUBIO
WILLIAM PLOSKI; ALI JAFRI

          Defendants.
…………………………………………………x

---

**AMENDED COMPLAINT**

---

ABEEB BALOGUN
Pro Se Plaintiff
17217 Jamaica Avenue 5B
Jamaica, New York 11432
Tel: (443) 600-0562
abeeb_balogun@hotmail.com