```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
  ABEEB K. BALOGUN,                                         :
                                    Plaintiff,              :
                                                            :      20 Civ. 10484 (LGS)
                   -against-                                :
                                                            :      OPINION AND ORDER
  NEW YORK STATE DIVISION OF                                :
  HUMAN RIGHTS, et al.,                                     :
                                    Defendant.              :
                                                            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Abeeb Balogun, proceeding pro se, brings this action against his former employer, Defendant New York State Division of Human Rights ("DHR") and his former supervisors Defendants Gina Martinez, Elizabeth Ortiz-Feliciano, Iris Carrasquillo, Marleny Rubio, William Ploski and Ali Jafri, alleging discrimination, a hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000 *et seq.* ("Title VII"), as well as various state law claims. Defendants move for summary judgment. For the reasons discussed below, Defendants' motion is granted as to the Title VII claim and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

I.  **BACKGROUND**

The facts below are drawn from the parties' Rule 56.1 statements and other submissions on these motions. The facts are either undisputed or based on evidence in the record drawing all reasonable inferences in favor of the non-moving party, Plaintiff.

Balogun self-identifies as a black, Nigerian man. On April 3, 2018, Balogun interviewed for a position as a Human Rights Specialist with DHR (the "HRS 1 Position"). The HRS 1 Position was responsible for conducting on-the-ground investigations of housing-related

discrimination cases. Balogun's interview panel collectively recommended that he be hired for the HRS 1 Position. Balogun's April 9, 2018, appointment letter outlined the terms of his initial probation and explained that unsatisfactory performance, poor attendance or unprofessional behavior could result in his termination prior to the end of his required fifty-two-week probationary period. DHR also had the discretion to offer the probationer an opportunity to serve a second term of probation.

The parties dispute whether Plaintiff met DHR's performance standards (the "Tasks and Standards") during his initial probation period. According to Defendants, Balogun struggled with this Tasks and Standards requirement from the beginning of his employment. In his first three months, Balogun completed thirteen cases. His first probation report -- given to him on July 31, 2018 (the "Q1 Probation Report") by his then-supervisor, Allison Schwier -- advised Balogun to "focus on meeting his case production to meet the Division standard of 108-120 [cases] per year, or average of 9-10 case per month." In or around August 2018, by which point William Ploski had replaced Schwier as Balogun's supervisor, Balogun met with Elizabeth Ortiz, Ploski's supervisor, about his low case production. Shortly thereafter, Balogun met with Ortiz's supervisor, Martinez, who was Deputy Commissioner for Regional Affairs and Federal Programs.

Balogun met his case production requirement during his second quarter of employment but completed only nineteen cases during his third quarter. In his January 28, 2019, report (the "Q3 Probation Report"), Ploski -- still Balogun's supervisor -- advised Balogun to improve his case production. According to Defendants, Ploski monitored Balogun's case load to ensure that Balogun always had at least twenty open cases and the opportunity to meet his case production numbers. By April 15, 2019, the date of his final probation report (the "Q4 Probation Report"),

Balogun had completed only ninety-two cases. The parties dispute the number of cases Balogun was assigned during this period as well as the number of cases that two other HRS 1 employees -- Aimee May and Elena Perlongo -- completed during their probationary period.

According to Defendants, Balogun also submitted poorly researched and poorly written investigative reports. In his Q1 Probation Report, Schwier, one of Balogun's supervisors, wrote, "Mr. Balogun should continue to proofread his [investigative reports] prior to submission, paying close attention to spelling and grammar, particularly subject-verb agreement." In the Q3 Probation Report, Ploski wrote, "[Balogun's] areas for improvement include . . . developing his writing skills." In the Q4 Probation Report, Ploski wrote, "Mr. Balogun should continue to proofread his [investigative reports] prior to submission, paying close attention to spelling and grammar." The parties also dispute whether Balogun accepted this feedback and re-wrote certain investigative reports.

Balogun's initial probation was due to end on April 25, 2019. "[D]ue to concerns in the areas of case production, timely submissions of cases, and proofreading," DHR determined that Balogun had not fulfilled the requirements of his probation period. In lieu of termination, DHR offered Balogun a period of extended probation. In the letter presenting Balogun with this option, DHR stated that the extended probation was contingent on his performance "meet[ing] the acceptable standards or [his] appointment [would] be terminated before the end of the probationary period." Balogun accepted the offer on April 17, 2019.

According to Defendants, Balogun's work performance did not improve during his extended probation. Balogun completed only thirty-eight cases in six-months -- below the rate required by the Tasks and Standards, which would have required between fifty-four and sixty

3

cases. Defendants also proffer evidence that Balogun's writing issues persisted during the extended probation period.

In or around August 2019, DHR supervisors realized that Balogun was handling field visits alone, contrary to DHR policy. For example, on August 16, 2019, Balogun was considered "AWOL" when absent from the office because he had not notified anyone that he was conducting a field visit. On October 1, 2019, Balogun emailed Defendant Rubio stating "[j]ust want to inform you that I have scheduled a filed [sic] visit and interview on 10/6/2019." In response, Rubio directed that Balogun bring someone with him. Balogun then emailed other supervisors at DHR, all of whom responded that Balogun should bring someone along on the October 4, 2019, visit.

On October 10, 2019, DHR notified Balogun that, after a week of paid leave, his employment would be terminated effective October 18, 2019. The October 10, 2019, probation report (the "Q2 Extended Probation Report") stated that DHR terminated Balogun because he had not shown improvement in four areas: (1) his writing, (2) his defiance of supervisory authority, (3) his inability to comply with the case production requirements and (4) his poor judgment in his investigations. This action followed.

## II.     STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

When a party appears pro se, a court must construe "the submissions of a pro se litigant . . . liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis omitted) (collecting cases); *accord Turner v. Naphcare*, No. 19 Civ. 412, 2020 WL 8988671, at *1 (S.D.N.Y. May 13, 2020).

### III.   DISCUSSION

#### A.   Title VII Discrimination

Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's race[,] . . . sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Defendants Martinez, Ortiz-Feliciano, Carrasquillo, Rubio, Ploski and Jafri are granted summary judgment on Plaintiff's discrimination, hostile work environment and retaliation claims because Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (internal quotation marks omitted). Defendants also are granted summary judgment on each of the Title VII claims against DHR as explained below.

To survive a summary judgment motion, courts apply the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019). First, a plaintiff must establish a prima facie case of discrimination by showing that (1) he belongs to a protected class, (2) he was qualified for the position he held, (3) he suffered an adverse employment action and (4) the adverse

5

employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).  Adverse employment actions include termination, demotion, a decrease in wage or salary, a material loss of benefits and other indices unique to a particular situation.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71-72 (2d Cir. 2019); *Gilani v. Teneo, Inc.*, No. 20 Civ. 1785, 2021 WL 3501330, at *19 (S.D.N.Y. Aug. 4, 2021).

If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to produce a legitimate nondiscriminatory reason for the adverse action.  *McDonnell Douglas*, 411 U.S. at 802; *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016).  If the defendant provides a nondiscriminatory explanation for the adverse action, then the burden shifts back to the plaintiff to "establish, by a preponderance of the evidence, that [Defendants'] justification is a pretext for discrimination." *Lenzi*, 944 F.3d at 108 (quoting *Legg v. Ulster Cnty.*, 820 F.3d 67, 73-74 (2d Cir. 2016)).  The defendant's motion for summary judgment is granted unless the plaintiff proffers sufficient evidence to permit a rational fact finder to infer that race, sex or national origin was a "motivating factor" for the defendant's employment decision, i.e., that the plaintiff was discriminated against, at least in part because of his protected status.  *See Lenzi*, 944 F.3d at 108.

          1.     **Title VII Discrimination Claim**

DHR is granted summary judgment on the Title VII discrimination claim because the record does not support an inference of discriminatory intent, either at the first step of the *McDonnell Douglas* analysis or the third step.  *See Menaker*, 935 F.3d at 30.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its

invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Plaintiff admits that he never heard his supervisors make any statements concerning his race, sex or national origin and instead argues that discrimination should be inferred because he was treated differently from other HRS 1 employees. To establish an inference of discrimination on these grounds, a plaintiff must "show[] that the employer treated [him] less favorably than a similarly situated employee outside [his] protected group . . . [and] must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *See Littlejohn*, 795 F.3d at 312 (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)); *see also Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) ("An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." (internal quotation marks omitted) (citation omitted)).

Plaintiff has not met this burden because he has not identified evidence from which a reasonable jury could find that he was similarly situated in all material respects to his proposed comparators. *See Littlejohn*, 795 F.3d at 312. Plaintiff identified several proposed comparators who he asserts completed fewer than 108 cases during their probationary period and who were not subject to extended probation or fired. Assuming that the proposed comparators completed fewer than 108 cases -- which Defendants vigorously dispute -- the proposed comparators nevertheless are legally insufficient because Plaintiff has not demonstrated that the comparators "engaged in comparable conduct." *See Ruiz*, 609 F.3d at 494; *Zheng-Smith v. Nassau Health Care Corp.*, No. 20-3544, 2021 WL 4097316, at *2 (2d Cir. Sept. 9, 2021) (summary order)

(concluding the plaintiff had not established a prima facie case where proposed comparator did not share the plaintiff's job performance or disciplinary history).

In Plaintiff's case, the salient facts are that he was on probation, that his reviews reflected persistent deficiencies in his productivity and writing skills, and that he had been insubordinate. In addition to completing fewer than 108 cases, Balogun's probation reports reflect that he needed to improve his writing skills, including "paying close attention to spelling and grammar" and his data entry skills. Plaintiff's final Probation Report, dated October 10, 2019, states, "Mr. Balogun has not shown improvement in his writing. He continues to have problems with subject-verb agreement with little to no improvement from his previous probationary report. . . . Mr. Balogun has also demonstrated a reluctance to follow supervisory authority and either ignores or defies supervisory suggestions." Plaintiff's proposed comparators did not receive similar performance-related feedback.

Balogun proffers two comparators with a disciplinary record who he argues were offered counseling sessions in lieu of termination.[1] Neither is an appropriate comparator. Comparator 1 participated in a counseling session after a colleague filed a sexual harassment complaint concerning his making a "sexually oriented gesture" at a DHR Holiday party. This is not "comparable conduct" to Plaintiff's. *See Ruiz*, 609 F.3d at 494; *Zheng-Smith*, 2021 WL 4097316, at *2.

---

[1] The Court refers to the two proposed comparators, non-parties to this case, anonymously due to the sensitive nature of the information in their disciplinary records. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (discussing the need to weigh "a risk of … mental harm … to innocent non-parties" in applications to proceed pseudonymously); *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (discussing the need for courts to weigh "the privacy interests of innocent third parties" in the context of filing documents under seal).

Comparator 2 is more comparable to Plaintiff, but ultimately also a legally insufficient comparator. The record shows that Comparator 2 attended a counseling session after an angry dispute with his supervisor and that he did not review 108 cases during the preceding review period. But the evidence does not show that he was on probation at the time, nor that the quality (in addition to the quantity) of his work was deficient. *See Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that plaintiff as a probationary employee was not similarly situated to the other employees regarding conditions under which he could be terminated, and thus "the mere fact that he was fired for his adjudications, while they were not, would not by itself support an inference of discrimination."); *accord Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757, 760 (2d Cir. 2008) (probationary and permanent employees not similarly situated).

Plaintiff's argument concerning DHR's denial of his transfer request fails on similar grounds. Plaintiff met with Defendant Jafri, DHR's Director of Human Resources, in April 2019, to request a transfer due to concerns that his supervisors were treating him unfairly. Jafri denied the request. Plaintiff argues that discrimination should be inferred from this denial because a colleague, Aimee May, was granted a transfer request in September 2019. The record reflects, however, that May was a permanent employee and not on probation at the time of her transfer, making her an inappropriate comparator. *See Feingold*, 366 F.3d at 153; *accord Woods*, 288 F. App'x at 760.

Plaintiff's remaining argument to suggest discriminatory animus lacks evidentiary support. Plaintiff claims that Defendant Ploski, one of Plaintiff's supervisors, discriminated against Plaintiff by withholding easy cases and denying supervisory support, as reflected in a September 13, 2018, recorded conversation. But the September 13, 2018, recording reflects the opposite. In the conversation, Ploski is giving feedback to Plaintiff after Plaintiff failed to

9

complete three assigned lack of jurisdiction ("LOJ") cases in a timely manner.  At one point, Ploski describes the "LOJ" cases as "easy" and says "I figured I would give you a gift."  Plaintiff responds, "I don't need no gifts."  Ploski answers, "If you're saying that, we won't help you with any cases, and we won't give you any easy cases," to which Plaintiff says, "give me the hard cases."  Ploski continues, "I want you to see it succeed, I want you to do well, and I want to help you any way I can, but I can't do it if you don't talk to me . . . I want you to succeed.  As a matter of fact, I need you to succeed, because I'm going to judge [sic] on how well you do."  Nothing in this conversation suggests that Ploski was treating Plaintiff adversely, nor that the treatment was on account of Plaintiff's race or national origin.  *See Littlejohn*, 795 F.3d at 312.  The evidence outlined above is insufficient to establish a prima facie case on the issue of discriminatory intent at the first step of the burden shifting analysis.

Even if the evidence outlined above were sufficient for a prima facie case -- i.e., to give rise to an inference of discriminatory intent -- that evidence is insufficient to satisfy the final and more demanding step of the burden shifting analysis, to proffer evidence from which a reasonable jury could find that race, sex or national original was a motivating factor in Plaintiff's termination.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008) (asking "whether, without the aid of the presumption, [Plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire him was based, at least in part, on [his race or national origin].).  Plaintiff does not dispute that Defendants have satisfied the second step of the analysis by producing evidence that Plaintiff was fired for a non-discriminatory reason, namely his failure to meet the Tasks and Standards required during his probation period.  At the final step, a plaintiff who "claims that the employer acted with mixed motives is not required to prove that the employer's stated reason was a pretext."  *Id.* at 141-42

(emphasis omitted).  Rather, "[a] plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that [discrimination] was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Id.* at 142 (internal quotation marks omitted).

Plaintiff has not made this showing.  His theory of discrimination is that he was treated differently from similarly situated colleagues.  But, as discussed *supra*, Plaintiff's proposed comparators are not sufficiently comparable to infer discrimination.  Plaintiff may believe he was treated unfairly, but unless he can show that this was at least in part because of his race, sex or national origin, the evidence is legally insufficient for a reasonable jury to find in his favor on a Title VII discrimination claim.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ("[Plaintiff's] feelings and perceptions of being discriminated against [are] not evidence of discrimination.") (cleaned up); *Lopez v. White Plains Hosp.*, No. 19 Civ. 6263, 2022 WL 1004188, at *10 (S.D.N.Y. Mar. 29, 2022).  Accordingly, Defendants are granted summary judgment on the Title VII discrimination claim.

**B.      Title VII Hostile Work Environment**

Plaintiff has not proffered evidence from which a reasonable jury could find in his favor on the Title VII hostile work environment claim.  Title VII prohibits an employer from discriminating in "compensation, terms, conditions, or privileges of employment, because of [an] individual's race, . . . sex or national origin." 42 U.S.C.A. § 2000e-2(a)(1).  "The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment . . ., which includes requiring people to work in a discriminatorily hostile or abusive environment." *Littlejohn*, 795 F.3d at 320 (citation omitted).

11

To establish a hostile work environment, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 101-02 (2d Cir. 2020) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). Generally, incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 102 (quoting *Alfano*, 294 F.3d at 374). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374. However, "a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* "Furthermore, the plaintiff must demonstrate that the conduct occurred because of his protected status." *Agosto*, 982 F.3d at 102 (internal quotation marks omitted).

Plaintiff argues that Defendants' "harassing conduct" took the form of "falsifying and fabricat[ing] information, threats and intimidation, misrepresentation of facts and law, and unreasonable interference with Balogun's work." But the alleged facts underlying these conclusions do not rise to the level of "permeated" with "intimidation, ridicule, and insult." *See Littlejohn*, 795 F.3d at 320-21. Even if they did, the hostile work environment claim fails for the independent reason that the evidence does support a finding that any of this "harassing conduct" was done with discriminatory animus. *See Agosto*, 982 F.3d at 101-02. Plaintiff has offered no evidence of remarks, pictures or gestures targeting his race, sex or national origin, and he admits

that he never heard his supervisors make any statements concerning his protected status. Accordingly, Defendants are granted summary judgment on the Title VII hostile work environment claim.

### C. Title VII Retaliation

DHR is granted summary judgment on the Title VII retaliation claim because the record does not support a prima facie case of retaliation. Title VII prohibits employers from retaliating "against any . . . employee[] . . . because [that individual] has opposed any practice" made unlawful by Title VII. 42 U.S.C.A. § 2000e-3(a). A Title VII retaliation claim is subject to the same *McDonnell Douglas* burden-shifting standard as a Title VII discrimination claim. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015). At the final stage of the burden shifting analysis, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action," *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (stating that the "but-for" test of causation applies at the later stage of the burden shifting analysis and is not a requirement for a prima facie case).

To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) "he was engaged in protected activity," (2) "the employer was aware of that activity," (3) the employee suffered "a materially adverse action," and (4) there was "a causal connection between the protected activity and that adverse action." *Agosto*, 982 F.3d at 104 (citation omitted).

The record does not support a finding of a prima facie case of retaliation because the evidence does not show that Plaintiff had been engaged in what the law defines as a "protected activity." Protected activity under Title VII includes "informal protests of discriminatory employment practices" such as "making complaints to management . . . [or] protesting against

13

discrimination by industry or by society in general." *Littlejohn*, 795 F.3d at 317 (cleaned up); *accord Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009) (summary order) (holding that an employee's email to her supervisor constituted informal protest actionable under Title VII). The plaintiff must have only "a good faith, reasonable belief" that he was opposing an employment practice unlawful under Title VII, and need not show that the conduct in fact was a violation of Title VII. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593-94 (2d Cir. 1988); *Velazquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order).

The critical requirement here is that the complaint must be "sufficiently specific to make it clear that the employee is complaining *about conduct prohibited by Title VII*." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) (emphasis added). "The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class," not just unfair treatment generally. *Malone v. Town of Clarkstown*, No. 19 Civ. 5503, 2022 WL 2834105, at *7 (S.D.N.Y. July 20, 2022) (internal quotation marks omitted); *see also Wilkins v. United Parcel Serv., Inc.*, No. 19 Civ. 8180, 2022 WL 597431, at *11 (S.D.N.Y. Feb. 28, 2022) (same); *Amley v. Sumitomo Mitsui Banking Corp.*, No. 19 Civ. 3777, 2021 WL 4429784, at *18 (S.D.N.Y. Sept. 27, 2021) ("If the discriminatory nature of the complaint is not 'readily apparent,' the onus is on the speaker to clarify to the employer that he is complaining of unlawful discrimination, rather than unfair treatment generally."); *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 309 (S.D.N.Y. 2009) ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a

protected activity."); *cf. Velazquez*, 803 F. App'x at 517 (addressing retaliation and protected activity retaliation under the Fair Labor Standards Act).

Plaintiff argues that he complained about unfair treatment on at least five occasions -- to Defendant Ploski in September 2018; to a union representative in April 2019; to Defendant Jafri in April 2019; to Defendant Martinez in August 2019; and to the Interim Director of Investigations, William Lamot, in September 2019. Plaintiff recorded these conversations, and the resulting transcripts make no reference, implicit or explicit, to Plaintiff's race, sex or national origin. His complaints are not about unfair treatment due to his protected status. Consequently, Plaintiff did not engage in protected activity recognized under Title VII.

Even assuming Plaintiff had established a *prima facie* case, the retaliation claim falters at the third stage of the burden-shifting analysis. As discussed above, Defendants satisfied their burden at the second step of proffering evidence of non-retaliatory, performance-based reasons for terminating Plaintiff. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The burden then shifts to Plaintiff to provide evidence that the non-retaliatory reasons are merely pretexts for retaliation. *Id.* Once an employer has proffered a non-retaliatory reason, temporal proximity between the protected activity and the allegedly retaliatory act is not enough for a plaintiff to survive summary judgment. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). A plaintiff must proffer additional evidence from which a reasonable jury could conclude "that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action[s]." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Plaintiff

15

has not proffered such evidence of a retaliatory motive. Defendants are granted summary judgment on the Title VII retaliation claim.

### D. State Law Claims

The Court lacks jurisdiction to adjudicate Plaintiff's state law claims against DHR and against the individual Defendants acting in their official capacities. The Court declines to exercise supplemental jurisdiction over the state law claims to the extent they are asserted against the individual Defendants in their personal capacities.

Defendants assert their affirmative defense of sovereign immunity[2] and move to dismiss the contract claim, promissory estoppel claim, intentional infliction of emotional distress claim and negligent supervision claim. Eleventh Amendment sovereign immunity bars state law claims and certain federal claims against New York State and its agents and instrumentalities. *Gollomp v. Spitzer*, 568 F.3d 355, 366-67 (2d Cir. 2009) (applying New York law); *cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976) (holding that Congress has abrogated the states' sovereign immunity for employment discrimination claims under Title VII). The New York Court of Claims is the exclusive forum for litigating state law claims for money damages against New York State. *See Gollomp*, 568 F.3d at 358 n.2 (2d Cir. 2009) (applying New York law); *Morell v. Balasubramanian,* 514 N.E.2d 1101, 1102 (N.Y. 1987) ("Since the adoption of the Court of Claims Act [in 1929], the State has been subject to suit for damages, but only in the Court of Claims."). Accordingly, the Eleventh Amendment bars resolution in this court of Plaintiff's state law claims against DHR and the individual Defendants in their official

---

[2] The Eleventh Amendment "does not automatically destroy original jurisdiction," but rather "grants the State a legal power to assert a sovereign immunity defense should it choose to do so." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (citations omitted); *Donohue v. Cuomo*, 980 F.3d 53, 77 n.15 (2d Cir. 2020).

capacities.  *See*, *e.g.*, *Fanelli v. New York*, 51 F. Supp. 3d 219, 233 (E.D.N.Y. 2014) (dismissing Title VII claim on the merits and the NYSHRL claim based on the Eleventh Amendment and sovereign immunity).

To the extent the Eleventh Amendment is inapplicable -- including to any state law claims against the individual Defendants in their personal capacities -- the Court declines to exercise supplemental jurisdiction.  See *Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990) ("[T]he Eleventh Amendment provides no immunity for state officials sued in their personal capacities.").  Federal courts may exercise supplemental jurisdiction over state law claims that are related to federal law claims and arise from the same common nucleus of operative facts.  *See* 28 U.S.C. § 1367(a).  District courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  When "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *accord Vaughn v. Phx. House New York, Inc.*, 957 F.3d 141, 146 (2d Cir. 2020) ("Because the District Court properly dismissed [the federal] claims, the only claims over which it had original jurisdiction, it did not abuse its discretion by declining to exercise supplemental jurisdiction over his [state law] claims.").  Accordingly, the contract claim, promissory estoppel claim, intentional infliction of emotional distress claim and negligent supervision claim are dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the Title VII discrimination, hostile work environment and retaliation claims. The state law claims are dismissed without prejudice.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 84 and to close the case.

Dated:  September 16, 2022
         New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**
